Filed 11/5/15  In re H.X. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re H.X., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>J.X. et al.,<br><br>　　Defendants and Appellants. | A141556<br><br>(Alameda County<br>Super. Ct. No. OJ12019164) |

　　J.X. (Father) and D.S. (Mother), the parents (Parents) of H.X. (Minor), appeal the jurisdictional findings underlying a dispositional order of the juvenile court.  Parents, who are proceeding in propria persona, raise a number of challenges to the judgment. They argue the juvenile court exceeded its jurisdiction, abused its discretion in making evidentiary rulings, failed to comply with statutory time limits, unlawfully delegated its authority over visitation, and improperly denied a peremptory challenge.  We find none of these arguments meritorious and will therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

　　We set forth the basic facts and procedural history of the dependency proceeding

1

below. Additional facts relevant to the legal issues raised are contained in the discussion section of this opinion.

*Original Welfare and Institutions Code Section 300 Petition[1]*

On June 21, 2012, the Alameda County Social Services Agency (the Agency) filed a section 300 petition on behalf of Minor, who was then six years old. As amended and sustained,[2] the petition stated subdivision (b) allegations based on a June 19, 2012 incident in which Parents left Minor at home alone. Parents had left home to appear in court regarding Minor's truancy, but at the hearing they refused to disclose Minor's whereabouts to the truancy court and the district attorney. The truancy court ordered a health and safety check on Minor, who was discovered alone at home hiding under some cushions. Parents' disruptive behavior in court led to their arrest for contempt of court, which made them unable to provide for the ongoing care and supervision of Minor for a few days. The third amended section 300 petition also stated subdivision (c) allegations based on the anxiety and discomfort Minor displayed between June 2012 and February 2013 when she was questioned about having contact with her parents. Minor also "consistently verbalized an unusually strong and unwavering refusal to see her parents," and her therapist said visits between Minor and Parents were very stressful and destabilizing for the child.

*Detention*

Neither of the Parents appeared at the detention hearing because they were "in custody with a court hearing in D-104" that same day. The juvenile court nevertheless found that "[n]otice has been given as required by law[.]" It appointed separate counsel for Mother and Father, and all parties "[s]ubmitted on the Social Services Report." The juvenile court found that continuance of Minor in Parents' home was contrary to her welfare, and it ordered her detained. The dependency investigation child welfare worker

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise stated.

[2] The petition was amended three times.

2

(CWW) was given the discretion to return Minor to her parents. The court set a jurisdiction/disposition hearing for July 5, 2012.

*Jurisdiction/Disposition*

The Agency prepared a jurisdiction/disposition report for the July 5, 2012 hearing, which was subsequently admitted into evidence. It recommended Mother receive family reunification services. As Father was then only an alleged father, the Agency was "not required to provide reunification services" to him. The report indicated Mother and Father were given notice on June 25, 2012 by "Certified or Return Receipt Requested."

According to the report, when the CWW had her first telephone contact with Mother, the latter "indicated that the Agency had no authority to detain the minor and [Mother] refused to talk . . . regarding the facts of the case and would not allow [the CWW] to come to the home for further assessment." Although Mother was informed on several occasions that Minor would not be returned to her until the CWW's investigation was completed, Mother continued to be uncooperative with the investigation.

The stabilization transition and assessment therapy clinician noted that when Minor was brought into protective custody, she "did not show any signs of distress based on her being separated from her mother nor did she cry or ask for her mother." As a result, the clinician recommended Minor undergo a psychological evaluation. Minor consistently refused phone contact and visits with Mother. During an attempted visit on June 26, 2012, for instance, both the CWW and the foster father observed Minor was resistant to visiting with Mother and attempted to hide from her. She told the CWW "she did not want to see the mother because 'I don't like her.' " Minor also refused telephone contact. Because of Minor's resistance to visiting with Mother, the CWW referred the family for therapeutic visitation.

At the jurisdiction/disposition hearing on July 5, 2012, Mother appeared and substituted in privately retained counsel. She contested the Agency's recommendations, and the contested jurisdiction/disposition hearing was set for August 8, 2012. The Agency was ordered to "set up suitable supervised, therapeutic visits at the Agency office." Visitation was to be "reasonable" but visits were to be suspended if Minor

3

refused to visit. The court also ordered that Minor be interviewed by the Child Abuse Listening, Interviewing and Coordination Center (CALICO).

The contested jurisdiction/disposition hearing began on August 8, 2012, and was continued numerous times. Hearings took place in November 2012, and in January, February, and March 2013.

The Agency reported Minor continued to be unwilling and anxious about having visits with Parents. Despite the CWW's attempts to encourage Minor to visit, Minor refused to visit with Parents on July 12, 19, and 26, 2012, and August 2, 2012. According to Minor's psychological evaluation, when Minor was asked about how she felt about her parents, "[s]he responded feeling 'angry and scared' and 'I don't know.' She became very regressed and hid behind the desk on the floor." At the CALICO interview, Minor initially referred to her foster parents as her only mother and father. When she finally admitted to having another mother and father, she said, "I don't want to live with the other mother." She also said she did not want to visit with Mother because Mother was " 'bad' " and Minor didn't like her.

Before a scheduled visit between Minor and Parents on August 15, 2012, Minor stated she did not want to visit with her parents because they would be " 'angry.' " Minor finally agreed to the visit when the worker suggested that "the parents could see her in the car and speak to her." But when Minor saw Parents approaching the car, she immediately reached out and locked her door. Parents approached and began speaking "very loudly and aggressively" to their daughter through the car window. Although Mother claimed Minor had told her that she was being sexually abused, Minor remained silent, either looking straight ahead or turning her head away from her parents. Minor said she was scared and asked to be taken away. The next day, Minor told her therapist she was scared of her parents and that she " 'never, never, never wanted to see her parents.' " Minor expressed concern that the CWW would tell her parents where she was placed and that Parents would come to her house.

Following the August 15, 2012 visit, the Agency submitted an ex parte application to suspend visits between H.X. and the Parents; the juvenile court granted the application,

4

and visits were temporarily suspended. Over the following months, Minor continued to express reluctance to have parental contact. Minor expressed fears that Parents would spank her and yell at her for making mistakes and doing things wrong. Minor even told the social worker that she hated her parents because they spanked her. Minor's therapist opined that it was " 'incredibly out of character' " for a child of Minor's age to be so " 'vehement and adamant' " since " 'attachment trumps everything when there has been trauma.' "

Despite Minor's reluctance, the Agency arranged for Parents to attend an orientation on October 23, 2012, at The Gathering Place (TGP) to set up therapeutic visitation. Parents refused to sign the forms necessary to begin therapeutic visitation until ordered by the juvenile court and did not sign until February 13, 2013. Positive therapeutic visits occurred on February 22 and March 25, 2013. Visits were again suspended, however, because Parents refused to cooperate with the therapeutic process. Parents were unwilling to attend two later appointments with TGP, and the organization discharged the family "due to a lack of engagement in assessment services and the therapeutic visit process."

Minor was upset about the breakdown in the visitation schedule, and the Agency recommended she be allowed to return home for a series of trial visits in April 2013. The juvenile court adopted the recommendation at the March 20, 2013 hearing. At the same hearing, Parents withdrew their contest and submitted to jurisdiction. The court set a hearing on disposition and a return on trial visits for April 30, 2013.

On April 2, 2013, however, the Agency filed an ex parte application to suspend the trial visits between Minor and Parents. On March 30, 2013, Mother alleged that Minor had told her the foster father had repeatedly sexually abused her and that the CWW had physically abused her. A police investigation ensued which included a Sexual Assault Response Team (SART) examination and a CALICO interview. Minor said she did not remember being abused by the foster father or the dependency investigation CWW. The SART examination showed no signs of trauma. The police closed the case. The juvenile court suspended the trial visits.

5

*Section 342 Petition*

The Agency filed a section 342 subsequent petition on April 8, 2013.  The petition was amended once.  As amended and sustained, the petition stated subdivision (b) allegations based on Parents' delusional and paranoid behavior which placed Minor at risk.  The allegations stemmed from the claims of sexual and physical abuse that Minor had made but were later found groundless.  The section 342 petition alleged Mother had coached Minor into making the allegations, which had resulted in Minor having to undergo an unnecessary SART examination and caused her emotional trauma.

*Hearings on the Petition*

At the initial hearing on the section 342 petition, Parents contested the allegations.  The juvenile court set a contested jurisdictional hearing for April 30, 2013.  It ordered Parents "at least 100 yards from the minor's school and the former foster parents' home."  Supervised telephone contact was subsequently allowed and did occur.

As to disposition on the section 342 petition, the Agency recommended Minor remain out of home and that Parents receive family reunification services.  Parents were not in agreement with the recommendation.  Thus, the juvenile court characterized the contested hearing on April 30, 2013, as a "342 jurisdiction hearing and the earlier 300 and 342 disposition hearing."  The contested hearings continued over nearly 11 months, from May 30, 2013 until April 2, 2014.

After hearing the evidence and argument from the parties, the juvenile court rendered its decision on April 2, 2014.  It found the Agency had met its burden of proof as to the allegations of the section 342 petition.  The court stated, "I believe that the parents are suffering some sort of mental health issues.  I'm certainly not an expert, but they are engaged in delusional speech and behavior."  The juvenile court found Parents had caused Minor physical trauma by subjecting her to an unnecessary invasive examination and had caused "a lot of emotional harm[.]"

The juvenile court also found the Agency had met its burden of proof as to disposition, explaining, "there is every indication that without the parents dealing with their various mental health issues and their behavioral issues that it may perpetuate the

physical harm that we now are getting from [Minor]." The juvenile court also noted it had "already covered" the emotional harm to Minor based on Parents' "untreated and undiagnosed . . . mental health issues." Minor was removed from Parents' physical custody and six months of reunification services were ordered.

Parents filed a notice of appeal challenging the April 2, 2014 jurisdiction finding.

DISCUSSION

Parents raise a plethora of arguments on appeal, many of which are less than clear. They claim the juvenile court exceeded its jurisdiction for various reasons. Parents also contest certain evidentiary rulings. Their principal arguments challenge the sufficiency of the evidence underlying the jurisdictional findings, the juvenile court's failure to complete the dispositional hearing within the time required by statute, and the lower court's allegedly unlawful delegation of authority over visitation. Finally, they contend the court improperly denied Father's peremptory challenge to the juvenile court judge. We address their contentions in turn.[3]

I.    *We Cannot Review the Truancy Court's Action Resulting in Minor's June 19, 2012 Removal.*

Parents argue the juvenile court "exceeded its jurisdiction" by permitting the removal of Minor from their home on June 19, 2012. Parents have hampered our ability to assess this argument, because this portion of their opening brief is devoid of citations to the record. (See Cal. Rules of Court, rules 8.204(a)(1)(C), 8.412(a)(2); *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 990 [rule requiring references to record "applies wherever a reference to a matter in the record appears in a brief"].) Despite this deficiency, what we glean from the clerk's transcript is that Parents appeared in court regarding Minor's truancy and "*were arrested after they went nuts on the Judge and*

───────────────

[3] Although neither party has suggested subsequent events have mooted this appeal, we take judicial notice of our own file in case No. A146115. In that case, Parents have appealed from the juvenile court's order of August 3, 2015, terminating their parental rights. We nevertheless reach the merits of this appeal because the jurisdictional and dispositional findings have the potential to affect subsequent proceedings and may be prejudicial to Parents. (*In re D.P.* (2014) 225 Cal.App.4th 898, 902; *In re A.R.* (2009) 170 Cal.App.4th 733, 740.)

7

*bailiff . . . .*"  Parents were charged with contempt of court and felony child endangerment but refused to disclose Minor's whereabouts, leading the judge to order a health and safety check on Minor.  Oakland police responded and discovered Minor hiding alone in the family residence.  The officers transported Minor to the assessment center.  Parents contend this constituted a warrantless seizure in violation of their Fourth and Fourteenth Amendment rights.

We agree with the Agency that we cannot consider this argument.  The removal of Minor on June 19, 2012, predated the petition in this proceeding and was not the result of an order by the dependency court.  Truancy proceedings are subject to an entirely separate and distinct statutory scheme.  (See §§ 601, subd. (b), 601.2-601.4; Ed. Code, § 48260 et seq.; *In re M.C.* (2011) 199 Cal.App.4th 784, 790 [distinguishing dependency jurisdiction from jurisdiction over truants and delinquent wards].)  Juvenile court jurisdiction over truancy matters is conferred by section 601.4.  The juvenile court's jurisdiction in this case, however, rests on section 300, which grants the juvenile court authority over dependent children.  Our appellate jurisdiction, in turn, is derived from section 395, subdivision (a)(1), which provides:  "A judgment *in a proceeding under Section 300* may be appealed in the same manner as any final judgment[.]"  (Italics added.)  Parents fail to show the truancy court's action is subsumed in the judgment in the section 300 proceeding.  We therefore have no power to review the action of which Parents complain.

II.     *Parents Have Forfeited Their Arguments Based on Lack of Notice.*

Parents contend that with the exception of the Agency's original section 300 petition, they "never knew [of] the existence of the amended petitions and subsequent petition."  In their view, this violated their due process rights and renders the juvenile court's jurisdictional order and all subsequent orders void.  We conclude Parents have forfeited this issue by failing to raise it in the juvenile court.

The record before us shows Parents did not appear at the June 22, 2012 detention hearing because they were in custody.  At that hearing, however, the juvenile court appointed counsel for both parents.  Mother appeared at the following hearing on July 5,

2012, and Father appeared at the hearing on August 8, 2012, after his release from custody. Parents attended all subsequent hearings. Mother was represented by counsel until January 7, 2014, and Father was represented by counsel until May 17, 2013. Despite having legal representation until after the filing of the section 342 petition on April 8, 2013, Parents point to nothing in the record showing that either they or their counsel objected to this alleged lack of notice.

In these circumstances, we must conclude Parents have forfeited the issue. The law requires that proper notice be given, but "when a parent had the opportunity to present [the notice] issue to the juvenile court and failed to do so, appellate courts routinely refuse to exercise their limited discretion to consider the matter on appeal. This is precisely because defective notice and the consequences flowing from it may easily be corrected if promptly raised in the juvenile court." (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754.) Parents appeared with counsel at numerous hearings and had the opportunity to ask the juvenile court to remedy the alleged failure of notice. Their failure to raise the issue below has forfeited the issue on appeal.[4] (*Ibid.*)

III.  *Parents Have Forfeited Their Challenges to the Legal Sufficiency of the Section 300 Petition, and Their Challenges to the Jurisdictional Findings Under That Petition Are Moot.*

Parents assert that the juvenile court abused its discretion by sustaining the petitions when it had no subject matter jurisdiction. We agree with the Agency that Parents have forfeited their right to attack the legal sufficiency of the section 300 petition. In addition, the juvenile court's subsequent assumption of jurisdiction based on the section 342 petition renders moot Parents' challenge to the jurisdictional findings under the original petition.

---

[4] Parents rely on *In re B.G.* (1974) 11 Cal.3d 679 in support of their argument. To the contrary, that case illustrates that even meritorious claims of lack of notice may be forfeited by failure to object in the juvenile court. There, the probation department "dispensed with any form of notice" to the mother. (*Id.* at p. 689.) The court nevertheless held the mother had "waived" the notice issue by appearing with counsel at subsequent hearings without challenging the lack of notice. (*Ibid.*) The case therefore undermines Parents' argument.

The record shows Mother, Father, and their respective counsel were present on March 20, 2013, for the contested jurisdiction/disposition hearing on the Agency's section 300 petition. At that hearing, the petition was amended by agreement, and Mother's counsel told the court, "My client is going to submit the matter without any further evidence today[.]" Father's counsel joined in that submission. Later in the hearing, both Parents withdrew their contests to jurisdiction. The juvenile court adopted the Agency's recommendations as to jurisdiction, finding the allegations in the subsequently filed third amended section 300 petition true, and found Minor was a child described in section 300.

Parents' argument is not a model of clarity, and this section of their opening brief is also bereft of citations to the record. On that basis alone, we could deem the argument unfounded. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) That aside, Parents appear to make two discrete challenges—the first to the sufficiency of the allegations of the section 300 petition, and the second to the sufficiency of the evidence supporting the jurisdictional findings under that petition. Parents have forfeited any challenge to the legal sufficiency of the original petition for at least two reasons. First, no challenge to the sufficiency of the allegations will lie because Parents *agreed* to the amended allegations. Second, Parents do not claim they objected to the legal sufficiency of the allegations in the juvenile court, and having failed to do so, they may not raise the issue for the first time on appeal. (*In re N.M.* (2011) 197 Cal.App.4th 159, 166.)

Insofar as Parents ask us to reverse the juvenile court's finding of jurisdiction under the original section 300 petition, we conclude any alleged error in that finding was rendered moot by the juvenile court's jurisdictional findings under the subsequent section 342 petition.[5] Here, the juvenile court sustained the section 342 petition, and thus

---

[5] Although the parties do not discuss the issue, Parents' challenge to the findings under the section 300 petition may be barred for another reason. As stated above, Parents withdrew their contests to jurisdiction and submitted the issue on the Agency's report. Ordinarily, submission of the issue on the social worker's report "does not waive his or her right to challenge the sufficiency of the evidence to support the court's jurisdictional finding." (*In re N.M., supra,* 197 Cal.App.4th at p. 167.) But while the record is

10

"jurisdiction was established independently under the subsequent petition on entirely new and independent facts." (*In re A.B.* (2014) 225 Cal.App.4th 1358, 1364.) As a consequence, we could grant Parents no effective relief by reversing jurisdiction under the original petition. "[S]o long as the jurisdictional finding under the subsequent petition is supported by substantial evidence, reversal of the jurisdictional finding under the original petition would be futile." (*Ibid.*) We therefore turn to Parents' contention that the jurisdictional findings under the section 342 petition are unsupported by substantial evidence.

IV. *Substantial Evidence Supports the Jurisdictional Findings Under the Section 342 Petition.*

Parents' challenge to the sufficiency of the evidence seems to be based chiefly on the assertion they did no more than attempt to protect Minor by reporting alleged sexual abuse. In Parents' view, this was legally required because they are "postsecondary coach and professors[.]" They argue the SART examination of their daughter did not constitute serious physical or emotional harm to Minor. Parents maintain the evidence is "uncontradicted" that they provided quality care and complied with legal requirements for protecting Minor from an abuser. We disagree.

A. *Standard of Review*

Parents have the burden on appeal to show there is insufficient evidence to support dependency jurisdiction. (*In re N.M., supra,* 197 Cal.App.4th at p. 168.) "In considering a claim of insufficient evidence to support a jurisdictional finding, we review the evidence most favorably to the court's order—drawing every reasonable inference and resolving all conflicts in favor of the prevailing party—to determine if it is supported by substantial evidence." (*Ibid.*) " 'If there is any substantial evidence, contradicted or

---

somewhat unclear, it appears Parents entered into a settlement with the Agency to avoid the contested jurisdictional hearing. As part of the agreement, Parents and the Agency signed, and the juvenile court approved, a safety plan and visitation schedule for Minor. If that is the case, "[b]y accepting the negotiated settlement—and its benefits—[Parents] implicitly waived [their] right to challenge the true finding under section 300[.]" (*Ibid.*) Since we conclude any challenge to the jurisdictional findings under the section 300 petition is now moot, we need not definitively resolve this question.

11

uncontradicted, which will support the judgment, we must affirm.' " (*D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1128, quoting *In re Tracy Z.* (1987) 195 Cal.App.3d 107, 113.) Substantial evidence may consist of inferences, as long as they are a product of logic and reason and rest on the evidence. (*In re David M.* (2005) 134 Cal.App.4th 822, 828.)

An appellant who claims the juvenile court's findings lack sufficient evidentiary support "must ' "demonstrate that there is no substantial evidence to support the challenged findings." . . .' [Citation.]" (*In re S.C., supra,* 138 Cal.App.4th at p. 414.) This cannot be done by reciting only the evidence favorable to appellant; the appealing party must set forth all material evidence on the point. (*Id.* at pp. 414-415; see also *id.* at p. 402 [appellant "must fairly set forth all the significant facts, not just those beneficial to the appellant."].) Furthermore, since we presume the judgment is correct, an appellant must demonstrate error and "must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*Id.* at p. 408.)

B.     *The Evidence Supports a Finding Under Section 300, Subdivision (b).*

Parents fail to demonstrate error. To begin with, their brief contains no discussion of the evidence that *supports* the juvenile court's findings. Their failure to set forth and analyze *all* the material evidence on this point forfeits any challenge to the sufficiency of the evidence underlying the jurisdictional findings. (*In re S.C., supra,* 138 Cal.App.4th at pp. 414-415.) Even if we overlook this fatal procedural defect, we conclude the jurisdictional findings are adequately supported by the evidence.

The section 342 petition alleged that jurisdiction existed under section 300, subdivision (b).[6] "The three elements for a section 300, subdivision (b) finding are: '(1)

---

[6] Under section 300, subdivision (b)(1), the juvenile court may adjudge a child dependent if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent

neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the [child], or a "substantial risk" of such harm or illness.' [Citation.]" (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1395-1396.) These elements are satisfied here.

The Agency prepared reports for the contested jurisdiction/disposition hearing, and these were admitted into evidence. According to the reports, on March 30, 2013, Parents took Minor to the San Leandro Police Department to file a police report alleging sexual and physical abuse by Minor's foster parents and physical abuse by the CWW. Mother claimed Minor told her the foster father raped Minor every day after school for 20 minutes. Mother reported that Minor told her the foster father also made Minor "take off her clothes and he would beat her." Mother also said Minor told her the foster mother would prick Minor's finger with needles. Mother further reported that Minor told her the CWW hit "her [Minor's] back and stomach with her fist, a stick, and a glass bottle."

Minor, however, told the investigating detective the allegations " 'did not come from her.' " The detective "reported that the minor also said 'my mother told me' that the allegations happened." During the CALICO interview, Minor stated she had not been sexually abused by the foster parents nor had she been physically abused by the CWW. Minor said her mother told her and " 'reminded' " her these things happened because the mother " 'could see far.' " Minor also stated in response to direct questions, " 'I don't believe it.' "

As part of the investigation, Minor underwent a SART examination at Children's Hospital Oakland. The results indicated no signs of physical or sexual abuse. In fact, the nurse practitioner interviewed about the results opined that "*the minor appeared to be coached*[.]" The investigating detective subsequently closed the case as unfounded

---

failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . . "

13

because of Minor's denial during her CALICO interview, as well as the fact that the SART examination results "were inconsistent with the allegations of rape."

The CWW testified the unfounded allegations of physical and sexual abuse caused Minor emotional distress, as she had to undergo an intrusive SART examination unnecessarily. Minor's therapist indicated that after the SART examination, Minor "was acting avoidant behavior and also . . . she was anxious." The CWW also testified she had concerns that Parents would continue to make similar allegations, thereby causing Minor further emotional distress. She was concerned Minor "would be torn between having to . . . gain her parents' approval by agreeing with them versus being truthful . . . That type of emotional stress for a minor causes high anxiety that can be very stressful . . . ."

From this evidence, the juvenile court could properly find Minor was at risk because of Parents' "failure or inability . . . to adequately supervise or protect" her. (§ 300, subd. (b)(1).) Parents' conduct subjected Minor to an unnecessary and intrusive SART examination. There was also sufficient evidence Minor had suffered serious emotional harm because of Parents' "delusional speech and behavior." As of the time the juvenile court rendered its decision, Parents had still not complied with the court's order for a psychological evaluation, and they continued to refuse services. Based on the evidence before it, the court was concerned Parents' mental health and behavioral issues "may perpetuate the physical harm that we now are getting" from Minor. These findings are adequately supported by the evidence.

V.     *The Juvenile Court's Evidentiary Rulings Were Not an Abuse of Discretion.*

Parents' next argument is headed: "THE JUVENILE COURT ABUSED ITS DISCRETION IN PERMITTING RESPONDENT'S CONTRIVANCE OF A JURISDICTIONAL ORDER BY THE PRETENSE OF A TRIAL AND BY INTENTIONAL SPOLIATION OF EVIDENCE IN RESPONDENT'S DISFAVOR." We are frankly unable to understand what Parents mean, and on that basis alone, we could deem the argument abandoned. (*In re S.C., supra,* 138 Cal.App.4th at p. 408, quoting *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1117 [" 'failure of appellant to advance any pertinent or intelligible legal argument . . . constitute[s] an abandonment of

14

the [claim of error' "].)  To the extent Parents challenge the juvenile court's evidentiary rulings, they correctly identify the standard of review.  We may reverse such rulings only if there has been a clear showing the juvenile court abused its discretion.  (*In re Cindy L.* (1997) 17 Cal.4th 15, 35.)  The test we apply in determining whether discretion has been abused is whether the juvenile court has exceeded the bounds of reason.  (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1135.)

Parents identify no such abuse.  They complain the juvenile court disregarded the Agency's intentional spoliation of evidence, but they fail to explain what evidence the Agency is alleged to have destroyed.  (See *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 8 [referring to spoliation of evidence as "the intentional destruction of evidence relevant to the lawsuit"].)  Parents appear to argue that, contrary to the findings of the abuse investigators, Minor was indeed sexually and physically abused.  This seems to be an attack on the juvenile court's decision to credit those findings rather than Minor's initial reports of sexual and physical abuse.  As such, it was an issue of fact and credibility for the juvenile court to resolve.  (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 495.)  Parents also contest the admission of "hearsay reports" from the Agency and treatment providers.  But it is well established that agency reports containing hearsay, even multiple hearsay, are admissible at the jurisdictional hearing and may form the basis of the jurisdictional determination.  (§ 281; *In re Malinda S.* (1990) 51 Cal.3d 368, 377-378.)  We therefore reject Parents' arguments.

VI.     *Parents Show No Prejudice from the Delay in Completing the Dispositional Hearing.*

Parents argue the juvenile court abused its discretion by exceeding the statutory time limit within which the dispositional hearing must be completed.  (§ 352, subd. (b).)[7]

---

[7] Section 352, subdivision (b) provides:  "Notwithstanding any other provision of law, if a minor has been removed from the parents' or guardians' custody, no continuance shall be granted that would result in the dispositional hearing, held pursuant to Section 361, being completed longer than 60 days after the hearing at which the minor was ordered removed or detained, unless the court finds that there are exceptional circumstances requiring such a continuance.  The facts supporting such a continuance shall be entered

15

Parents contend the delay was detrimental to Minor's interest in being returned to their care and harmed Minor's health and emotional well being. Although Parents claim the delay was error, they propose no specific remedy for it.

Parents' argument also suffers from a number of procedural defects. First, they do not show they preserved it for appeal. Generally, a party must raise the section 352 issue in the juvenile court or any objection to the delay will be forfeited. (See *In re I.C.* (2015) 239 Cal.App.4th 304, 314-315.) Indeed, when a parent who is represented by counsel fails to object to an order continuing the hearing beyond the time limit set by the statute, "the absence of such an objection shall be deemed a consent to the continuance." (§ 352, subd. (c).) This section of Parents' opening brief contains no citations to the record, so they have not shown that they or their counsel brought the alleged error to the juvenile court's attention. Thus, Parents have not demonstrated they preserved this objection.

Second, we review the juvenile court's decision to grant a continuance only for abuse of discretion. (*In re Emily D.* (2015) 234 Cal.App.4th 438, 448.) To show abuse of discretion, Parents must demonstrate the juvenile court " 'exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice.' [Citation.]" (*Ibid*.) But save for claiming the trial judge improperly used "court congestion" as a justification, Parents refer to nothing in the record showing why the juvenile court continued the matter. Our own independent review of the record discloses, however, that at least two continuances were granted at the request of Parents' counsel and over the Agency's objection. Parents can show the juvenile court abused its discretion only if they tell us both the reasons the court exercised its discretion in the manner it did and why those reasons are so arbitrary, capricious, and absurd as to constitute a miscarriage of justice. Their brief fails to do so.

In any event, the time limits of section 352, subdivision (b) are not mandatory in the jurisdictional sense. (*In re Richard H.* (1991) 234 Cal.App.3d 1351, 1362.)

upon the minutes of the court. In no event shall the court grant continuances that would cause the hearing pursuant to Section 361 to be completed more than six months after the hearing pursuant to Section 319."

16

" 'Section 352 does not supply a penalty for noncompliance,' and a dispositional order will be reversed only if prejudice can be shown from the unauthorized delay. [Citation.]" (*In re I.C., supra,* 239 Cal.App.4th at p. 314.)  Parents do not explain how they were prejudiced other than to make a one-sentence argument that the delay caused serious detriment to Minor's need for stability.  (See *In re Daniel M.* (2003) 110 Cal.App.4th 703, 708 [argument forfeited where party "develops no argument and cites no supporting legal authority for this proposition"].)  It is true the dispositional hearing in this case was completed more than six months after Minor was detained, but the delay alone is not necessarily prejudicial.  (See *In re Angelique C.* (2003) 113 Cal.App.4th 509, 523 [delay in holding dispositional hearing gave appellant more time to participate in services]; *In re Richard H., supra,* 234 Cal.App.3d at pp. 1361-1362 [dispositional hearing held almost one year after detention not necessarily contrary to interests of minor].)  Since Parents have failed to show prejudice from the delay, their argument fails.  (*In re Angelique C., supra,* 113 Cal.App.4th at p. 523.)

VII.    *The Juvenile Court Did Not Unlawfully Delegate Its Authority Over Visitation.*

Parents next contend the juvenile court abused its discretion by unlawfully delegating its authority over visitation to the Agency and its employees.  However, since their opening brief does not cite to the portions of the record containing the juvenile court's visitation orders, Parents have again failed to meet their burden of demonstrating error.  (See *County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1443 ["the appellant must identify each order that he asserts is erroneous, cite to the particular portion of the record wherein that ruling is contained, and identify what particular legal authorities show error with respect to each challenged order"].)

We review the juvenile court's orders setting the terms of visitation for abuse of discretion.  (*In re Brittany C.* (2011) 191 Cal.App.4th 1343.)  "We will not disturb the order unless the trial court made an arbitrary, capricious, or patently absurd determination."  (*Id.* at p. 1356.)  The juvenile court has the authority to define a noncustodial parent's right to visit with a dependent minor.  (*In re Moriah T.* (1994) 23 Cal.App.4th 1367.)  It need not specify all the details of visitation and "may delegate to

17

the probation officer or social worker the responsibility to manage the details of visitation, including time, place and manner thereof. . . . Only when a visitation order delegates to the probation office or county welfare department the absolute discretion to determine whether any visitation occurs does the order violate the statutory scheme and separation of powers doctrine." (*Id*. at p. 1374.)

In this case, the juvenile court first ordered the Agency "to set up suitable supervised, therapeutic visits at the Agency office." The Agency was to arrange for "reasonable visitation" but if Minor refused to visit, "the visits [were] to be suspended." The Agency's July 5, 2012 jurisdiction/disposition report explained the therapeutic visitation process would involve Minor first meeting alone with a clinician to prepare her for visits with Mother, and then Mother would gradually be introduced into the sessions.[8] The Agency encouraged Minor to visit during that month, but Minor refused. At a visit arranged on August 15, 2012, Minor refused to get out of the car, and Parents became "agitated and aggressive." Parents attempted to prevent the CWW from driving away, and Father opened the car door and spoke loudly to the CWW in Mandarin. The Oakland police had to be called because of "the chaos created by the parents' behavior[.]" The juvenile court then granted the Agency's application for a temporary suspension of visitation. Many later attempts to arrange visitation were unsuccessful because Parents either refused to complete the required paperwork despite being ordered to do so, were unwilling to attend supervised visitation sessions, or declined to undergo psychological evaluations ordered by the juvenile court.

Despite these difficulties, two therapeutic visits did occur before Parents refused to cooperate in the visitation process. After Mother made what were later determined to be unfounded allegations of abuse, the juvenile court again suspended visitation because it found it would be detrimental to Minor. Nevertheless, Parents still had supervised telephone contact with Minor.

---

[8] At that point in the proceedings, the Agency was not required to provide reunification services to Father because he was only an alleged father.

18

The juvenile court's visitation orders "must be viewed in the context of the family dynamics in play." (*In re Brittany C., supra,* 191 Cal.App.4th at p. 1356.) Our review of the record discloses that the court and the Agency were attempting to arrange appropriate visitation in very difficult circumstances. (See *id.* at pp. 1356-1357.) Minor was often unwilling to visit, and Parents frequently proved disruptive and uncooperative. It was not unreasonable for the juvenile court to order only supervised, therapeutic visitation or to suspend that visitation until Parents completed psychological evaluations. (*Id*. at p. 1357 [juvenile court properly ordered individual therapy for minors and suspended visits because visitation was detrimental to children].) The juvenile court's orders did not unlawfully delegate its power to determine whether visits would take place. When Minor refused to visit, the visits were rescheduled. (*Id*. at p. 1358.) The Agency was permitted to do no more than manage the time, manner, and place of visitation. (*In re Moriah T., supra,* 23 Cal.App.4th at pp. 1373-1374.) The juvenile court did not abuse its discretion in taking Minor's wishes into account as it attempted "to fashion a visitation plan that has a hope of success." (*In re Brittany C., supra,* 191 Cal.App.4th at p. 1358.)

VIII. *Father's Peremptory Challenge Was Properly Denied as Untimely.*

Finally, Parents contend the juvenile court abused its discretion in denying Father's peremptory challenge to the juvenile court judge. On May 3, 2013, Father filed a peremptory challenge under Code of Civil Procedure section 170.6. He filed a second peremptory challenge on May 8. On May 9, the juvenile court denied the peremptory challenge, stating in its minute order, "The motion is untimely." The juvenile court was correct.

Regarding the timing of a peremptory challenge, Code of Civil Procedure section 170.6, subdivision (a)(2) provides: "In no event shall a judge . . . entertain the motion if it is made after . . . the giving of any evidence or after trial of the cause has otherwise commenced." In this case, the contested hearing on the section 342 petition began on April 30, 2013, several days before Father filed his first peremptory challenge. At the outset of the hearing, the juvenile court stated, "this matter is on today for the parents' contested Welfare and Institutions Code Section . . . 342 jurisdiction hearing and

the earlier 300 and 342 disposition hearing." At that hearing, a tape recording of Minor's CALICO interview was played. The juvenile court commented that "watching the CALICO interview is evidence." Father's then counsel argued later in the hearing that "the government's *evidence* just started today with the CALICO video[.]" (Italics added.)

Thus, under the plain language of the statute, the juvenile court could not have entertained Father's peremptory challenges because they were made "after . . . the giving of . . . evidence or after trial of the cause ha[d] otherwise commenced." (Code Civ. Proc., § 170.6, subd. (a)(2).) As the peremptory challenges were clearly untimely, the juvenile court did not err in denying them.

## DISPOSITION

The judgment is affirmed.

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.

A141556

21