Filed 5/13/21  In re K.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.R., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,　　Plaintiff and Respondent,　v.　A.R.,　　Defendant and Appellant. | E076446　(Super.Ct.No. J281755)　OPINION |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, Svetlana Kauper, Deputy County Counsel, for Plaintiff and Respondent.

A.R. (Father) appeals the termination of his parental rights to K.R. (Minor; a girl, born Oct. 2016) at a Welfare and Institutions Code section 366.26[1] hearing. Father contends the juvenile court erred by (1) refusing to grant his request for a continuance of the section 366.26 hearing so he could file a section 388 petition; and (2) failing to apply the beneficial parent/child relationship exception of section 366.26, subdivision (c)(1)(B)(i) (beneficial relationship exception).

**FACTUAL AND PROCEDURAL HISTORY**

A.     DETENTION

On June 10, 2019, San Bernardino County Children and Family Services (the Department) received a referral of general neglect for Minor. Minor, who was just over two years old, was found walking barefoot alone in the street. Law enforcement arrived on the scene and found Father trying to find Minor. Minor had been in the care of Father for the prior year.[2] Father reported working in his backyard when he realized Minor was missing. Minor was only around the corner, but the highway was just 50 feet from the residence. Law enforcement inspected the home and found there was exposed electrical wiring and areas of the home did not have working water or electricity. Minor's room was "a little dirty." While law enforcement was present, Minor got out of her playpen and attempted to exit the home. Minor had cuts and scrapes on her knees. Law

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] C.B. (Mother) had a substance abuse problem and had not been taking care of Minor. Mother is not a party to the appeal and will only be mentioned if such reference is relevant to the termination of Father's parental rights.

enforcement left Minor in Father's custody, and he assured them that he understood the importance of adequately supervising Minor.

A social worker assigned to the case tried to find Father and Minor for over one month; the address given to the Department by law enforcement was incorrect. The social worker finally was able to go to the correct residence on July 17, 2019. When the social worker arrived, all of the gates into the residence were unlocked and open, and the sliding glass door was open. The social worker knocked hard on the door, but no one answered. She moved to another door and knocked again, and the voice of a little girl was heard asking "Who is it? Whose [sic] there?" Law enforcement was called and entered the residence. Father and his girlfriend were found asleep in the bedroom and Minor was in the home. There was no running water, as evidenced by a dry toilet; there were exposed electrical wires; and minimal food. Syringes, spoons, and a bowl indicative of drug paraphernalia were found in a brown paper bag outside the residence. Outside, there was broken glass and an exposed saw blade. There was trash throughout the property. Two males, who were also in the residence, were arrested for outstanding warrants.

Father told the social worker he had been asleep and had not heard her knocking on the door. Father was "shocked" the property gates and sliding glass door into the residence were open. Father had not added any safety features since Minor had been found wandering on the street. Father was unemployed. Minor's hair was matted and she had cuts on the bottom of her feet. She had an insect bite on her inner thigh. She also had a round scar that resembled a cigarette burn. Minor was detained and placed in a

3

foster home.  Father had a prior conviction for vandalism in 2018.  Father and his girlfriend were arrested for child neglect.[3]

The Department filed a section 300 petition against Father on July 19, 2019.  It was alleged under section 300, subdivisions (b), failure to protect, that (1) Father had an untreated substance abuse problem; (2) he had a criminal history; (3) Minor lived in the home with Father, which had exposed electrical wiring, limited water, and no working toilet; (4) Father exposed Minor to individuals known to engage in criminal activities; and (5) due to Father's arrest on July 17, 2019, Minor was left without care or support.

A detention hearing was held on July 22, 2019.  A prima facie case was established and Minor was ordered detained from Father.  Supervised visitation was ordered one time each week for two hours.

B.      JURISDICTION/DISPOSITION

The jurisdiction/disposition report was filed on August 8, 2019.  It was recommended that the allegations in the section 300 petition be found true.[4]  It was recommended that Father receive reunification services.  Minor had been placed with a paternal aunt (Aunt) on August 2, 2019.

---

[3] It does not appear from our review of the record that law enforcement pursued charges against Father.

[4] The Department later recommended, and the juvenile court dismissed, the allegations under section 300, subdivision (b), that Father's criminal history rendered him unable to properly care for Minor and that Minor was left without provisions for care and support.

Father had been interviewed during the reporting period. Father admitted using methamphetamine and marijuana. He had been using marijuana since he was eight years old. He had never been in a substance abuse program. He denied using in front of Minor. Due to his substance abuse, he had lost his home. He was living in the current residence and fixing it up as payment of rent. He was working on cleaning up the home. He admitted there were persons in the home with a criminal past when Minor was detained. Father had missed a drug test.

The Department recommended that Father be named the presumed father. Father was on informal probation for vandalism, which was his only prior criminal conviction. It was recommended that Father submit to random drug testing. Minor was generally in good health but behind on her immunizations.

Father had one visit with Minor during the reporting period, for which he was late. Minor appeared to recognize him but was not upset when the visit ended.

On August 12, 2019, the date set for the jurisdiction/disposition hearing, Father signed a waiver of rights and submitted on the reports by the Department. Minor was to remain in the care of Aunt. The Department was to increase visitation if it was in the best interests of Minor. The court continued the hearing.

On September 12, 2019, a further report was provided to the juvenile court before the continued jurisdiction/disposition hearing. Minor was examined on July 29, 2019, due to concerns of physical and sexual abuse. She had two bruises on her right thigh and the location made it appear that they were inflicted trauma. There was no confirmation of sexual abuse. Father tested positive for marijuana on August 8 and August 12, 2019.

5

On October 18, 2019, a first amended petition was filed adding an additional allegation pursuant to section 300, subdivision (a), serious physical harm, and section 300, subdivision (b), failure to protect, that while Minor was in Father's custody, she sustained bruises indicative of physical abuse. The first amended detention report added the additional information regarding the forensic medical exam of Minor.

Father denied the allegations in the first amended petition. The case was referred to mediation. A social worker from the Department completed a home visit with Aunt and Minor on November 4, 2019. Minor was shy and did not want to speak with the social worker. On September 4, 2019, Father had another positive test for marijuana. Father failed to appear at the mediation but his counsel participated.

The further jurisdiction/disposition hearing was conducted on November 13, 2019. Minor continued in the custody of Aunt. The additional allegation of serious physical harm to Minor pursuant to section 300, subdivision (a), was dismissed. Father admitted to the allegations in the first amended petition pursuant to section 300, subdivision (b), failure to protect, that Minor had bruises on her legs that were indicative of physical abuse; Father suffered from untreated substance abuse; Minor had been living in a home with no working toilet and exposed electrical wires; and Father exposed Minor to individuals with known criminal histories. Father was granted reunification services "not [to] exceed six months."

C.     STATUS REVIEW REPORTS

The matter was continued from May 13, 2020, to June 17, 2020, due to the Covid-19 pandemic. The six-month status review report was filed on May 20, 2020. It was

6

recommended that reunification services be continued for Father and that Minor remain in the home of Aunt. Father was working full time. He had moved into a home that was furnished, had working utilities, ample food, and no safety hazards. Father had not completed his court-ordered reunification services. Father was to participate in counseling, parenting classes, and substance abuse services. Substance abuse services included random drug testing, a 12-step program, and outpatient treatment. Father had completed a primary substance abuse treatment program between December 6, 2019, and January 4, 2020. While in treatment, he had attended counseling sessions and parenting classes. Father was living with his girlfriend.

Father had been referred to a parenting class with a start date of September 25, 2019, but failed to attend. On April 15, 2020, Father was referred to a virtual parenting class. He attended one class on April 17. As for random drug testing, Father had two positive tests for marijuana on August 16, 2019, and September 4, 2019. He was a no-show 11 times between September 27, 2019, and March 30, 2020; Father's referral for random drug testing had expired on January 26, 2020, and had been reinstated in March 2020. He had a negative test on April 14, 2020. Father explained to the Department he did not participate in drug testing while he was seeking substance abuse treatment from December 6, 2019, to January 4, 2020.

Father was also enrolled in an outpatient drug treatment program. Meetings were held virtually. Father had not participated in individual counseling. Father insisted he had done some outpatient substance abuse services but the Department had not been provided records of his participation.

Father had consistently attended visitation. Visits were supervised by Aunt. Father was attentive during visits and engaged in age-appropriate play. Minor was comfortable and happy during visits with Father. It was recommended that Father's visitation be increased once he received three negative drug tests. Father wanted to reunify with Minor and was willing to complete his services.

Minor was developing normally. She was friendly, active and engaged in age-appropriate play. Minor attended daycare and was learning preschool curriculum.

The Department recommended and the parties stipulated to the recommendation that reunification services for Father be continued.

A status review report was filed on July 21, 2020. It was recommended that Father's reunification services be terminated and that a section 366.26 hearing be set. Father was working full time as a plumber. During the reporting period, Father had not fully participated in his reunification services. Father reported relapsing in May 2020. Minor was developing normally and was bonded to Aunt.

Father had been referred to counseling in March 2020. Several attempts were made by the counseling services to reach Father to set up appointments. Father did not respond and the referral was terminated on June 3, 2020. Father attended his first virtual parenting class on April 17, 2020, and attended four or five sessions. In July 2020, he advised the Department he had stopped attending, and wanted to complete the classes in an inpatient program. He claimed he was having technical problems with the Zoom platform. He was encouraged to continue the virtual classes until he could get into an

inpatient program. Father reported attending another parenting class but had not provided confirmation of attendance.

As for Father's substance abuse treatment, he had a negative test on April 14, 2020, but had been a no show four times in April and May 2020. His referral for random drug testing expired on May 28, 2020. A new random drug test referral was submitted on July 7, 2020. Father insisted he had been calling and his color had not been called. It was discovered that Father had been calling the wrong phone number. Father never reported he was having trouble getting tested.

On May 19, 2020, Father tested positive for methamphetamine through his outpatient program. He testified positive again on May 28, 2020. On June 2, 2020, Father contacted the Department stating he believed he would be kicked out of the outpatient program and inquired about an inpatient program. Father had been referred to another outpatient program on July 10, 2020, and he was being assessed. On July 17, 2020, he was referred to an inpatient program. Since the continuation of reunification services, Father had failed to make substantial progress in his services.

Father maintained regular visitation during the reporting period, but visitation had not been increased due to Father failing to test negative on three consecutive drug tests. Minor continued to enjoy visits with Father.

The Department was recommending termination based on Minor being under three years old at the time of removal, Father had not been actively participating in his services, and had relapsed.

9

The 12-month review hearing was conducted on July 29, 2020. Father's counsel asked that the matter be continued and set as contested. The juvenile court denied the request finding notice was good and Father had not completed his services. The juvenile court terminated reunification services and set the section 366.26 hearing. Weekly supervised visitation was to continue.

D.    SECTION 366.26 REPORT

The Department filed a section 366.26 report on November 17, 2020. The Department recommended a permanent plan of adoption for Minor by Aunt. Minor had been with Aunt since August 2, 2019. Minor was four years old and had no developmental issues. Aunt and Minor were bonded. Father continued to be consistent in his visitation with Minor, which was supervised by Aunt. Minor was appropriate for adoption. Aunt felt she and Minor had a mother/daughter relationship. Aunt and Minor were from the same family and Aunt was able to share their culture and heritage with Minor. Aunt would allow contact between Father and Minor after adoption.

The Department recommended adoption and stated that the termination of Father's parental rights would not be detrimental to Minor.

The section 366.26 hearing was continued from November 30, 2020, to January 14, 2021. An update was provided to the juvenile court on January 13, 2021. Father had completed eight therapy sessions. He had not completed any other services. Minor was thriving in Aunt's home. Aunt expressed the importance of Minor maintaining familial relationships with her parents and relatives. There was no change in recommendation.

E.     SECTION 366.26 HEARING

The section 366.26 hearing was held on January 14, 2021. At the beginning of the hearing, Father's counsel requested to continue the matter so that counsel could file a section 388 petition. Father had just advised counsel that he had completed a relapse prevention program and was testing negative for drugs. This was in addition to completing counseling. The juvenile court ruled, "That request is denied. It's not in the child's best interest, and [Father] had plenty of time to get his services done and file a 388, and it was set contested today."

Father testified. He opposed the termination of parental rights. Minor had lived with him up until she was detained. Father maintained consistent visitation with Minor. Father and Minor visited in Aunt's home. When he arrived for visits, Minor would run and jump into his arms and yell, "daddy." His visits with Minor consisted of playing in the yard, preparing dinner together, giving her a bath, and then putting her to bed. Minor loved to sit on his lap and give him hugs. He loved Minor. He was working to do better so he could have Minor in his life.

Father's counsel argued for a lesser placement of a legal guardianship. Further, the beneficial relationship exception applied in the case. Father had a significant relationship with Minor. The Department conceded the first prong of the beneficial relationship exception had been met. Although visits went well, Father did not occupy a parental role. He was not given more visitation because he failed to have three consecutive negative drug tests.

11

The juvenile court found that Minor was adoptable. It was clear Father met the first prong of the beneficial relationship exception. The juvenile court recognized Father was working to make changes in his life but young children could not wait for parents to be able to effectively parent. The juvenile court noted, "I believe there very well could be detriment to [Minor] to sever the parental relationship; however, I need to weigh that versus that fact that she is thriving in her current home." The juvenile court was hopeful that Aunt, as Father's sister, would continue to allow Father to have contact with Minor as long as he was clean and sober. The juvenile court noted the real issue was that Minor had a stable home, which Aunt provided. Father had not met his burden of showing the beneficial relationship exception applied. Father's parental rights were terminated and Minor was freed for adoption.

## DISCUSSION

A.     <u>DENIAL OF CONTINUANCE OF SECTION 366.26 HEARING</u>

Father insists the juvenile court abused its discretion by denying his oral request to continue the section 366.26 hearing in order for him to file a section 388 petition.

"Continuances are discouraged in dependency cases." (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 604.) However, section 352, subdivision (a)(1) provides, "Upon request of counsel for the parent, guardian, minor, or petitioner, the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that a continuance shall not be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody

12

status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." Subdivision (a)(2) of section 352 provides that "Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary." Subdivision (a)(3) further provides, "In order to obtain a motion for a continuance of the hearing, written notice shall be filed at least two court days prior to the date set for hearing, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance."

"The trial court's ruling on whether a request for a continuance came within those guidelines is reviewed for abuse of discretion." (*In re B.C.* (2011) 192 Cal.App.4th 129, 143-144.) " 'To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice.' " (*In re Emily* (2015) 234 Cal.App.4th 438, 448.)

Here, a written motion was not filed by counsel prior to the section 366.26 hearing. As such, the juvenile court need only grant a continuance if Father showed good cause to entertain an oral motion for continuance. The juvenile court did not abuse its discretion by concluding Father had not shown good cause for the continuance both because it was not in Minor's best interests and because Father had "plenty of time" to complete his services and file a section 388 petition prior to the contested section 366.26 hearing.

Father had several months during which he could have informed his counsel of his progress in his substance abuse treatment. Reunification services for Father were

13

terminated on July 29, 2020. The original section 366.26 hearing was to be held on November 30, 2020, but was continued to January 14, 2021. This was 18 months after Minor, who was under three years old, had been detained. Father had plenty of time to not only complete his services, but also to notify counsel that he had completed the relapse prevention program and was drug testing prior to the contested section 366.26 hearing. Father's request for more time to file the section 388 petition did not constitute good cause for a continuance.

Father states on appeal that he had just advised counsel at the section 366.26 hearing that he had completed a relapse prevention program and was testing negative for drugs. However, there is no indication in the record of the date he completed the program or tested negative. Father was referred to an inpatient program in July 2020, which was six months prior to the section 366.26 hearing. Assuming Father had only recently completed the relapse prevention program and did not have time to advise counsel, this would not constitute good cause to continue the section 366.26 hearing. Father had completed a substance abuse treatment program in January 2020. After that, he had a relapse in May 2020. If Father had, in fact, just recently completed the program, it was reasonably concluded by the juvenile court that this was not proof of his stability and sobriety. Moreover, there was no indication that he had completed parenting classes or any outpatient treatment, as was part of his plan.

Additionally, it was not in Minor's best interest to continue the section 366.26 hearing. Father had over 18 months to complete his reunification services. For long periods of time, Father did nothing on his plan. Minor was under three years old at the

14

time she was detained.  The denial was appropriate so that Minor could be provided a stable home with Aunt.  (§ 352, subd. (a)(1).)  The juvenile court did not abuse its discretion by refusing the request for a continuance.

B.      BENEFICIAL RELATIONSHIP EXCEPTION

Father claims he had a significant bond with Minor, who had been in his custody up until she was almost three years old, and he had maintained consistent visitation.  The juvenile court erred by failing to apply the beneficial relationship exception of section 366.26, subdivision (c)(1)(B)(i).

" 'The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time.'  [Citation.]  When the child is removed from the home, the court first attempts, for a specified period of time, to reunify the family."  (*In re Celine R.* (2003) 31 Cal.4th 45, 52.)  After reunification services are denied or terminated, " 'the focus shifts to the needs of the child for permanency and stability.' "  (*Ibid.*)  Adoption is preferred once reunification services have been terminated and, "adoption should be ordered unless exceptional circumstances exist."  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 51.)

Under section 366.26, subdivision (c)(1), the juvenile court must terminate parental rights if it finds "by clear and convincing evidence" it is likely the child will be adopted.  There are several statutory exceptions.  Under section 366.26, subdivision (c)(1)(B)(i), one such exception exists where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the

15

relationship." A beneficial relationship is established if it " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re Brandon C.* (1999) 71 Cal.App.4th 1530, 1534.)

The parent has the burden of proving the statutory exception applies. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.) The parent must show both that a beneficial parent/child relationship exists and that severing that relationship would result in great harm to the child. (*Ibid*; see also *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350 (*Jasmine D.*); *In re Jerome D.* (2000) 84 Cal.App.4th 1200, 1207.)

"[I]t is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1350.) " 'A biological parent who has failed to reunify with an adoptable child may not derail adoption merely by showing the child would derive some benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.] A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree, but that does not meet the child's need for a parent.' " (*In re Jason J.* (2009) 175 Cal.App.4th 922, 937.)

"In reviewing challenges to a trial court's decision as to the applicability of these exceptions, we will employ the substantial evidence or abuse of discretion standards of review depending on the nature of the challenge." (*In re J.S.* (2017) 10 Cal.App.5th 1071, 1080.) "The first determination—most commonly whether a beneficial parental or

16

sibling relationship exists, although section 366.26 does contain other exceptions—is, because of its factual nature, properly reviewed for substantial evidence. [Citation.] The second determination in the exception analysis is whether the existence of that relationship or other specified statutory circumstance constitutes 'a compelling reason for determining that termination would be detrimental to the child.' " (*In re K.P.* (2012) 203 Cal.App.4th 614, 622.) Based on the foregoing, the issue of whether a beneficial parent/child relationship exists is reviewed for substantial evidence and the decision of whether that relationship constitutes a compelling reason for termination being detrimental to the child is reviewed for an abuse of discretion. (*Ibid.*)

As noted by the juvenile court, Father clearly had maintained consistent visitation with Minor to support the first prong of the beneficial relationship exception. The juvenile court ultimately determined that Father had not met his burden of showing that severing the relationship would result in great harm to Minor, outweighing the benefits of adoption. (*In re Bailey J.*, *supra*, 189 Cal.App.4th at pp. 1314-1315.)

Father focuses on the fact that he was the primary caretaker for Minor for the first three years of her life. However, the conditions in which Minor was living were deplorable. Minor had been found wandering in the street barefoot, the home did not have proper plumbing, had exposed electrical wiring, and was riddled with drug paraphernalia. When a social worker came to the residence, the gates were unlocked and Father was so deep in sleep that it took law enforcement entering his bedroom to wake him. Father had made no effort to put in safety features despite the prior interactions with law enforcement when Minor was found alone in the street. Additionally, Minor

17

had bruises, scratches, and scars on her body, some of which were suspected to be the result of physical abuse. As such, when Father was tasked with being a parent to Minor he was incapable of properly caring for her.

Father did make improvements over the course of the dependency proceedings but was unable to complete his reunification services. Further, Father undoubtedly was still struggling with maintaining his sobriety as he initially was only testing positive for marijuana, but during the dependency proceedings he twice tested positive for methamphetamines. Father's failure to maintain his sobriety was a risk to the stability to which Minor was entitled.

While Minor did have a relationship with Father, Minor was thriving in Aunt's home.[5] When Minor first arrived, she was shy and did not interact with the social worker. However, as she spent more time in Aunt's care, she was reported to be a happy and active child. Aunt and Minor had a strong bond. Further, Aunt agreed to continue visitation between Minor and Father. Aunt provided to Minor the "permanency and stability" that Minor needed. The juvenile court did not abuse its discretion by concluding the bond between Father and Minor did not amount to an "extraordinary case that preservation of the parent's rights" should prevail over the preference for adoption. (*Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1350.)

---

[5] In his appellant's reply brief, Father contends the juvenile court improperly focused on how Minor was thriving in Aunt's home and should have focused on the bond between himself and Minor. However, the juvenile court could consider how Minor was adapting to her new home and that it provided the permanency and stability she deserved, and was not outweighed by the bond she may have with Father. (See *In re Brandon C.*, *supra*, 71 Cal.App.4th at p. 1534.)

# DISPOSITION

The juvenile court's order terminating Father's parental rights is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

MENETREZ
J.

19