Filed 6/13/22  In re Bradley K. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re BRADLEY K. et al., Persons Coming Under the Juvenile Court Law. | B314259 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JUSTIN K., Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP00211B-C) |

APPEAL from orders of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge.  Affirmed.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

_____

At a review hearing pursuant to Welfare and Institutions Code section 364,[1] the juvenile court terminated dependency jurisdiction over now-five-year-old twins Bradley K. and Nolan K. and awarded sole physical and legal custody to their mother, Miranda L., with monitored visitation for their father, Justin K. Justin appeals the orders, contending he did not receive proper notice of the hearing, denying him due process; the court erred in denying a continuance of the hearing; and the court abused its discretion when awarding sole legal custody to Miranda and limiting him to monitored visits. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Sustained Petition*

On March 11, 2020, following Justin's and Miranda's no contest pleas, the juvenile court sustained a three-count amended dependency petition pursuant to section 300, subdivision (b)(1), finding as to the first count that Justin had inappropriately disciplined Robert C., Miranda's oldest child, by head butting Robert, causing him unreasonable pain and suffering; Justin had on prior occasions verbally abused Robert; and Miranda had failed to take sufficient steps to protect Robert when she knew or should have known of Justin's excessive discipline. Justin's

---

[1] Statutory references are to this code.

2

abusive conduct and Miranda's failure to protect Robert, the court found, endangered Bradley and Nolan, as well as Robert, placing all three children at substantial risk of serious physical harm. As to the second count the court found Justin and Miranda had a history of engaging in physical and verbal altercations in the children's presence with Justin as the aggressor; Miranda failed to protect the children by allowing Justin to reside in the home and have unlimited access to the children. In the third count the court found Justin had created a detrimental and endangering home environment in October 2019 when he brandished a gun in Robert's presence during a confrontation with Robert's father.

The evidentiary bases for the parents' no contest pleas and the juvenile court's jurisdiction findings were contained in the detention and jurisdiction/disposition reports prepared by the Los Angeles County Department of Children and Family Services and admitted into evidence at the March 11, 2020 hearing.

At the time of the events that precipitated the dependency petition, Miranda and Justin lived together with Robert, Bradley and Nolan, and Justin's two children from a prior relationship, Landon and Zeus. Following a child welfare referral in December 2019, Robert, then 11 years old, told the Department's social worker he had been playing with Landon and Zeus when Landon pushed him and Robert returned the push. Landon complained to Justin, who got angry and head-butted Robert, raising a bump on Robert's forehead and causing a headache that persisted for an hour. Robert's father, after learning of Justin's actions, came to the house to confront Justin. Justin brandished a gun during their quarrel.

3

Robert also reported a prior episode during which Justin had elbowed him when angry and said Justin verbally abused him on multiple occasions. According to Robert, Justin was physically violent toward Miranda ("put[ting] his hands on her") approximately twice per month. In addition, Robert recalled an incident a few weeks earlier when Justin was helping Miranda, who has mobility challenges and uses a wheelchair, get into bed. Justin picked Miranda up, dropped her on the bed, and then fell on top of her, breaking bones in her leg.

Miranda acknowledged that she and Justin argued on a weekly basis and that during arguments Justin "puts his hands on me." She described one occasion when, after she had called Justin a loser and Nolan repeated the word "loser," Justin struck both of them in the mouth. The maternal grandmother, who assists Miranda as an in-home caregiver, confirmed Justin had "popped the baby in the mouth" and then "popped" Miranda for calling him a name. Miranda described her broken leg as a "freak accident," denying that Justin had intentionally injured her, as suggested by Robert's description of the incident.

Justin denied engaging in violent behavior toward Miranda, Robert or other family members, although admitting he "slightly hit" Nolan when Nolan repeated the word "loser." When interviewed a second time both Robert and Miranda joined those denials, insisting Justin never engaged in violent or inappropriate conduct.

2. *Disposition*

After sustaining the section 300 petition, the court declared Bradley and Nolan dependent children of the court, removed them from the care and custody of Justin and allowed their continued release to Miranda under the supervision of the

4

Department.[2]  The court ordered family maintenance services for Miranda, including a support group for victims of domestic violence and individual counseling with a licensed therapist to address case issues (domestic violence, child protection and coparenting).  As enhancement services, Justin was ordered to participate in a program for perpetrators of domestic violence, random drug or on-demand drug testing (based on Justin's significant marijuana use) and individual counseling to address anger management, appropriate discipline and domestic violence.  The court limited Justin to monitored visits with Bradley and Nolan in a neutral setting.[3]

At the conclusion of the disposition hearing the court scheduled a section 364 review hearing for September 10, 2020.  On May 11, 2020 the court advanced and continued the review hearing to February 8, 2021 due to COVID-19 court closures.

---

[2]  After initially detaining the children from both Miranda and Justin on January 15, 2020, at a prerelease investigation hearing on January 30, 2020 the court ordered all three children returned to Miranda's custody with a number of conditions to ensure their safety, including authorizing unannounced visits by the Department at the family home.

[3]  The court also declared Robert a dependent child of the court, removed him from the care and custody of his father and ordered his release to Miranda under the supervision of the Department.  The court's orders with respect to Robert are not at issue in this appeal.

3. *The Section 364 Review Hearing*

a. *The status review report*

The Department's status report for the continued review hearing, filed January 21, 2021, stated Miranda, who did not plan to reconcile with Justin, was in full compliance with her case plan. According to the report, Miranda "has provided loving and nurturing care for each of the children, and she has consistently and carefully attended to all of their needs. Mother and the children appear to have a close bond, and no safety concerns have been observed or reported." Justin, in contrast was noncompliant with court-ordered services. He had not participated in drug/alcohol tests and provided no evidence of enrollment in a domestic violence program, parenting class or individual counseling. Justin did attend all scheduled visitation sessions (monitored by a paternal aunt) and was engaged with the children during the visits. The Department recommended the court terminate dependency jurisdiction and enter a juvenile custody order awarding Miranda sole physical and legal custody of Bradley and Nolan with monitored visits for Justin.

b. *Faulty notice for the February 8, 2021 hearing*

On February 8, 2021 the matter was set for a contest at the request of Justin's counsel, but the hearing was continued to April 22, 2021 because the notice of the hearing sent to Justin used Miranda's address and failed to include all required information.[4]

---

[4]     The notice to Robert's father also used an incorrect address.

### c. *Faulty notice for the June 1, 2021 hearing*

At the outset of the case Justin filed a Judicial Council form JV-140, Notification of Mailing Address, indicating he lived at the address on either "Cara Street" or "Cora Street" in Sunland. As the Department's counsel subsequently explained, whether the second letter in Justin's handwritten street address on the JV-140 form is an "a" or an "o" was unclear. Nevertheless, at the detention hearing the court had confirmed the correct spelling of the street name as "Cora Street."

On March 30, 2021 the Department sent Justin a notice for the April 22, 2021 review hearing, addressed to the correct street number on the incorrect street ("Cara Street") in Sunland, California 91040.

On April 2, 2021, on the court's own motion, the April 22, 2021 hearing date was vacated, and the matter continued to June 1, 2021. On May 24, 2021 the Department sent Justin notice of the new hearing date, again incorrectly addressed to Cara Street in Sunland.

At the remote hearing on June 1, 2021, for which Justin did not call in, his counsel objected to notice: "Notice was short. It was only sent nine days ago."[5] Asked by the court if counsel was waiving the defect, counsel responded, "No, I am not." Justin's attorney did not mention any error in the address used for notice or indicate Justin did not actually receive the notice.

The court continued the matter to July 21, 2021 and directed the Department to provide proper notice. The court also

---

[5] Section 292, subdivision (c), requires the social worker to serve notice of a review hearing held pursuant to section 364 "not earlier than 30 days, nor later than 15 days, before the hearing."

7

ordered the Department to provide an update on Justin's progress in programs and visitation.

d. *Notice and the last minute information report*

On June 22, 2021 the Department sent Justin notice of the new July 21, 2021 hearing date. The notice was again sent to Cara Street in Sunland.

In a last minute information report filed July 7, 2021, the Department advised the court Justin had stated he had completed individual counseling and provided certificates of completion for an online domestic violence course and two online parenting courses. The Department attempted to confirm Justin's participation in counseling, but the counselor Justin identified had not responded to email inquiries. The report emphasized the online domestic violence course and online parenting courses in which Justin had participated were not Department-approved programs and noted Justin had been provided a list of approved treatment programs in January 2020. The Department's recommendation remained unchanged: termination of jurisdiction with a custody order awarding Miranda sole physical and legal custody of Bradley and Nolan with monitored visits for Justin.

e. *The July 21, 2021 status review hearing*

Justin was not present at the section 364 hearing on July 21, 2021, which, as discussed, had been set, in part, to hear his contest challenging the Department's recommendation to terminate jurisdiction and enter a custody order awarding Miranda sole physical and legal custody of the twins. Justin's counsel objected to notice, explaining the street name had been misspelled as Cara Street, rather than Cora Street. Counsel added, "I was not able to get hold of him, which is why I can't

8

waive notice." The Department's counsel confirmed the error, but asserted Justin's writing on the notice of mailing address form was unclear and insisted, "It is not incumbent upon the Department to each and every time the parent filed the JV-140 to then do a search to see whether that is an existing address."

The court found notice proper, explaining, "Given the facts it went to Sunland, California, it's a small town. I think the post mail person would know if there's a Cora Street or a Cara Street. And I'm going to find notice proper. Reluctantly so, I have to say, but I think Sunland is a small enough town, that the postal service would be able to determine that there was a typographical error. That happens quite frequently. And I think, had it been in Los Angeles, I would have probably taken a different view. But the fact it was in Sunland, which is a relatively small town, with I believe only one zip code, I will find notice proper over father's objection."

The court then proceeded to the merits of the review hearing. Justin's counsel objected to a juvenile custody order that did not, at the very least, provide for joint legal custody and unmonitored visitation. Although conceding the programs Justin had completed were not approved by the Department, counsel explained Justin had been given referrals before the COVID-19 shutdown, which led to all his in-person classes being cancelled. According to Justin's counsel, Justin had been told by the Department that he was on his own to find new programs, which is why he ended up with unapproved online courses.

The court asked the Department whether Justin's noncompliance with his case plan was the reason for its recommendation that Miranda be awarded sole legal custody of the twins. Counsel responded, "no," explaining it was due to the

9

court's finding that there had been severe domestic violence and that Justin had brandished a handgun during his confrontation with Robert's father.

Following argument, the court found the conditions that would justify the initial assumption of jurisdiction under section 300 no longer existed and were not likely to exist if court supervision was withdrawn. Accordingly, the court terminated jurisdiction over Bradley and Nolan and directed preparation of a juvenile custody order that provided for Miranda to have sole physical and legal custody of the two children with monitored visitation for Justin.

The court stayed its order terminating jurisdiction to permit Miranda's counsel time to prepare the juvenile custody order. The juvenile custody order was entered on July 23, 2021, and the stay of the order terminating jurisdiction was lifted.

Justin filed a timely notice of appeal.

## DISCUSSION

1. *The Misspelled Street Name Does Not Require Reversal of the July 21, 2021 Orders*

Notice of review hearings in a dependency case is both a constitutional and statutory requirement. (§ 292; *In re Cindy L.* (1997) 17 Cal.4th 15, 29; see *In re Marilyn H.* (1993) 5 Cal.4th 295, 308-309; *In re Mia M.* (2022) 75 Cal.App.5th 792, 807.) Nonetheless, because the juvenile court found notice proper notwithstanding the slight misspelling of the name of the street on which Justin lived—finding it likely the mailed notice was delivered to the correct address—it was Justin's burden on appeal to demonstrate error. (See *In re A.L.* (2022) 73 Cal.App.5th 1131, 1161 [""[w]e must indulge in every presumption to uphold a judgment, and it is [appellant's] burden

10

on appeal to affirmatively demonstrate error—it will not be presumed""""]; *In re J.F.* (2019) 39 Cal.App.5th 70, 79 ["[t]he juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error'"].)  Justin failed to make the required showing.

As discussed, at the hearing on June 1, 2021 Justin's counsel objected that notice for that date was insufficient because it was not sent at least 15 days in advance of the hearing. Counsel did not identify any defect in the address used or suggest Justin had not actually received the notice.  Even if counsel's failure to object to the misspelling did not forfeit the issue as the Department contends (see *In re Wilford J.* (2005) 131 Cal.App.4th 742, 754 [notice error in dependency proceeding forfeited where party had opportunity to bring the issue to the juvenile court's attention but did not raise it, thereby depriving court of the opportunity to correct the asserted mistake]), his silence on that point reasonably supports the inference notice for the June 1, 2021 hearing was actually received by Justin, albeit not in a timely manner.  Accordingly, it was also reasonable for the court to infer Justin received the subsequent notice sent to the same address.

At the July 21, 2021 hearing, while noting the misspelled street name, counsel, who explained he had not been able to reach Justin, did not indicate, one way or the other, whether Justin had received notice of the hearing.  Significantly, however, Justin did not move pursuant to section 388 to modify the orders made on July 21, 2021 during the period they were stayed, submitting in support of such a motion his declaration or other evidence that he had not received the Department's notices or

11

lacked actual notice of the review hearing.[6] While Justin was not required to file such a motion, that information, even if the section 388 motion had been denied, would have allowed us to assess whether the juvenile court erred in finding notice proper. (Cf. *In re Christopher L.* (2022) 12 Cal.5th 1063, 1080 [noting father had not presented arguments concerning prejudice resulting from his absence at the jurisdiction and disposition hearings in a section 388 motion to reconsider the challenged orders].)

On this sparse record, and in light of the presumption the juvenile court's order is correct, we cannot conclude the misspelling of Cora Street on the section 364 hearing notice requires reversal of the orders entered on July 21, 2022.

2. *The Court Did Not Abuse Its Discretion by Failing To Continue the July 21, 2021 Review Hearing*

The juvenile court has the power to "control all proceedings during the hearings with a view to the expeditious and effective ascertainment of the jurisdictional facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought."

---

[6] Justin was present at the March 11, 2020 jurisdiction and disposition hearing and knew the court had set a date for the section 364 review hearing as the next scheduled event in the dependency proceedings, although that knowledge did not relieve the Department of its obligation to provide proper notice of the continued hearing dates as required by section 292 and ordered by the court on February 8, 2021 and June 1, 2021. In addition, throughout the case Justin was represented by counsel, who appeared on his behalf at the February and June 2021 hearings and had an obligation to keep Justin informed of the status of the case.

(§ 350, subd. (a)(1); see *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 779; *In re Emily D.* (2015) 234 Cal.App.4th 438, 448.) Pursuant to that authority, the juvenile court may continue a dependency hearing upon a showing of good cause, provided the continuance is not contrary to the interest of the child. (*In re Elizabeth M.*, at p. 779; see § 352, subd. (a)(1) ["[A] continuance shall not be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements"], (2) ["[c]ontinuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance"].) We review an order denying a continuance for abuse of discretion. (*In re Elizabeth M.*, at p. 780.)

Although Justin's counsel did not expressly request a continuance of the July 21, 2021 review hearing, we agree with his argument on appeal that the objection to the form of notice provided by the Department impliedly did so. (See generally § 352, subd. (a)(3) [written notice two court days prior to the date set for the hearing is required for a motion to continue "unless the court for good cause entertains an oral motion for continuance"].) We also agree, because the twins were residing with Miranda, a short continuance would not have been contrary to their interest. However, Justin's trial counsel offered no reason a continuance should be granted, never suggesting Justin had evidence to present to the court that would be material to the decisions to be made at the review hearing—either Justin's own

13

testimony or testimony from witnesses who were unavailable on July 21, 2021. Absent any showing of the need for a continuance, let alone good cause, the court's decision to proceed with the review hearing (an implied denial of the implied motion for a continuance) was not an abuse of discretion. (See *In re Elizabeth M.*, *supra*, 19 Cal.App.5th at p. 780 [decision to deny continuance that was neither arbitrary nor irrational did not constitute an abuse of discretion].)

> 3. *The Court Did Not Abuse Its Discretion in Awarding Miranda Sole Physical and Legal Custody and Restricting Justin to Monitored Visitation*
>> a. *Governing law and standard of review*

Section 364, subdivision (a), requires the juvenile court to schedule a review hearing at least every six months for a dependent child who has not been removed from the physical custody of his or her parent or guardian. At the hearing dependency jurisdiction must be terminated unless the conditions that created the need for supervision still exist or are likely to exist if supervision is discontinued.

When the juvenile court terminates its jurisdiction over a child who has been declared a dependent child of the court, the court, "on its own motion, may issue . . . an order determining the custody of, or visitation with, the child." (§ 362.4, subd. (a); see *In re T.S.* (2020) 52 Cal.App.5th 503, 513.)[7] Section 362.4

---

[7] Once a child has been adjudged a dependent of the juvenile court pursuant to section 300, "any issues regarding custodial rights between his or her parents shall be determined solely by the juvenile court . . . so long as the child remains a dependent of the juvenile court." (§ 302, subd. (c); see *In re Anna T.* (2020) 55 Cal.App.5th 870, 876.)

14

specifies that order "shall continue until modified or terminated by a subsequent order of the superior court" and directs the order be filed in a pending family law proceeding (§ 362.4, subd. (b)) or, if there is none, as part of a new family court file (§ 362.4, subd. (c)).

When making a custody determination under section 362.4, "'the court's focus and primary consideration must always be the best interests of the child.'" (*In re T.S.*, *supra*, 52 Cal.App.5th at p. 513; accord, *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268; *In re John W.* (1996) 41 Cal.App.4th 961, 965 ["it is the best interests of the child, in the context of the peculiar facts of the case before the court, which are paramount"]; see *In re Chantal S.* (1996) 13 Cal.4th 196, 206.)

We review a juvenile court custody order, like the order terminating jurisdiction, for abuse of discretion. (*In re C.W.* (2019) 33 Cal.App.5th 835, 863; *In re M.R.* (2017) 7 Cal.App.5th 886, 902; see *In re T.H.* (2010) 190 Cal.App.4th 1119, 1124.) We "may not disturb the order unless the court ""exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."""" (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300-301; see *In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319 [""""[t]he appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason""""].)

b. *The juvenile custody award was well within the juvenile court's broad discretion*

As discussed, when sustaining the dependency petition, the juvenile court found Justin had engaged in domestic violence against Miranda, physically abused the twins' older half-sibling Robert, and brandished a firearm during a confrontation with

15

Robert's father. The evidence in the record also indicated Justin had struck Nolan in the mouth when Nolan repeated Miranda's "loser" epithet. As of July 2021, when the court terminated its jurisdiction over Bradley and Nolan, Justin had not completed court-ordered services with Department-approved providers (although his counsel explained Justin's justification for participating in unapproved online programs) and Justin had not progressed past monitored visitation. On this record the court's determination Justin should not be involved in decisionmaking regarding the twins (and, thus, sole legal custody to Miranda) and supervision of Justin's visitation with the young children was still necessary for their protection (thus, monitored visitation) was neither arbitrary nor irrational.

Justin argues the programs in which he participated, although not approved, were appropriate and notes his visitation with the twins had been consistent and without incident. He also minimizes or outright denies the physical violence detailed in the court's jurisdiction findings—findings he assented to with his no contest plea and did not challenge on appeal. Viewed from his perspective, Justin contends a juvenile custody order specifying joint legal custody and unmonitored visitation should have been entered. Such an order might well have been within the court's broad discretion, but the order as entered cannot be characterized as exceeding the bounds of reason. There was no abuse of discretion.

## DISPOSITION

The orders terminating jurisdiction and awarding sole legal and physical custody of the children to Miranda, with monitored visitation for Justin, are affirmed.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.