Filed 2/17/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re EMILY D. et al., Persons Coming Under the Juvenile Court Law. | B256783 |
| | (Los Angeles County Super. Ct. No. DK03412) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| ELIZABETH D., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marilyn Mordetzky, Juvenile Court Referee. Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Elizabeth D., the mother of Emily D., Michael D. and Heather C., appeals from the juvenile court's May 21, 2014 jurisdiction findings and disposition orders declaring the children dependents of the juvenile court, removing them from Elizabeth's care and custody and placing them with their respective fathers under the supervision of the Los Angeles County Department of Children and Family Services (Department). Elizabeth contends the juvenile court deprived her of her due process right to a fair trial by assuming the function of an advocate rather than an impartial tribunal; violated Welfare and Institutions Code section 352[1] by continuing the jurisdiction/disposition hearing without good cause; and violated section 350, subdivision (c), by improperly considering evidence submitted after the Department had presented its case-in-chief. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Detention of the Children*

On November 27, 2013 the Department filed a dependency petition on behalf of Elizabeth's three children, ages 10, eight and six, alleging Elizabeth had a history of substance abuse and had tested positive for methamphetamines and marijuana; the father of Heather (Allan C.) had abused marijuana; and the home Allan shared with Elizabeth and the children was filthy and unsanitary. (§ 300, subd. (b).)

The detention report indicated previous referrals had been received in 2004 and 2006 alleging drug use by Elizabeth.[2] The instant intervention was triggered by an October 28, 2013 referral alleging Elizabeth was abusing methamphetamine and alcohol and had engaged in verbal altercations with Allan in front of the children. The Department first interviewed Elizabeth's mother, who confirmed she had heard from others that Elizabeth was using methamphetamine and marijuana. The children had been visiting their grandmother for about a week but did not show signs of neglect. On

---

[1]    Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    The April 2006 referral alleged general neglect and drug use by Elizabeth. When investigated, the home was dirty and messy but was cleaned at the worker's request. Elizabeth tested positive for marijuana but no other drugs. After she moved to the home of a maternal aunt, the investigation was closed because the situation had stabilized.

October 31, 2013 a social worker visited Elizabeth's residence. The house was messy, and Elizabeth appeared as if she had just been awakened. Elizabeth denied using methamphetamine but admitted using marijuana, even though her medical license had expired. She agreed to submit to a drug test. In a separate interview Allan admitted he used marijuana because of injuries he had received in a car accident some years earlier but insisted he does not smoke in front of the children.

On November 7, 2013 the Department received drug testing results for Elizabeth and Allan. Elizabeth had tested positive for methamphetamine (at an extremely high level), amphetamine and marijuana. Allan tested positive for marijuana. When confronted with the test results, Elizabeth again denied methamphetamine use but confided to the worker she had been sleeping with a neighbor who used methamphetamine and that her positive test may have resulted from those encounters, a proposition the worker rejected as "doubtful." Allan said he was not aware Elizabeth had been using methamphetamine but agreed not to leave the children alone with her. Byron D., father of Emily and Michael, acknowledged Elizabeth had used drugs frequently when they were younger (including cocaine and heroin) but said he did not know about her current use. His wife, who had attended high school with Byron and Elizabeth, suspected Elizabeth was using methamphetamine because her face sometimes had blisters, a possible side effect of methamphetamine use. Elizabeth did not respond to telephone calls from the worker.

On November 22, 2013 the Department obtained a warrant authorizing removal of the children. The social workers serving the warrant found the house messy, with trash covering the floor and dishes piled in the sink, and smelling of marijuana. Allan told the workers he and Elizabeth had been sick and unable to clean; his odd behavior caused the workers to become concerned for their personal safety. When served with the warrant, Elizabeth became upset and screamed at the workers, claiming the children would be molested if they were put in a foster home. She also denied using methamphetamine and suggested someone had tampered with her drug test. The worker observed several blisters on Elizabeth's face. Elizabeth told the workers the children were living with their

3

maternal aunt and uncle, who, when contacted, agreed to keep the children pending the detention hearing. The children showed no physical signs of abuse.

At the November 27, 2013 detention hearing the juvenile court found a prima facie showing had been made the children were persons described by section 300 and ordered the children detained in the home of the maternal aunt. The court found Byron to be the presumed father of Emily and Michael and Allan to be the presumed father of Heather; the court ordered the Department to investigate whether the children could be released to their respective fathers. Elizabeth was ordered to have monitored visits; all parents were ordered to submit to random drug testing.

2. *The Jurisdiction/Disposition Hearing*

The jurisdiction/disposition hearing was originally scheduled for February 13, 2014. The Department had not completed its investigation, however, in part because Elizabeth had failed to return the telephone calls of the investigator. Monitored visits had proceeded well between the children and Allan and Elizabeth. Elizabeth had tested negative for drugs on December 18, 2013 and January 8, 2014 but claimed she had been unable to produce a sample at a January 23, 2014 test. At the hearing the court ordered Elizabeth to respond to the investigator and the Department to report further on drug testing and to interview the family for a supplemental report. The matter was continued to March 20, 2014 for a contested jurisdiction hearing.

As described in an addendum report filed for the March 20, 2014 hearing, Elizabeth told the investigator her positive methamphetamine test had resulted from a one-time outing with her girlfriends. She also stated she had used marijuana to ease her social anxiety. She believed she did not need to enroll in a rehabilitation program and suggested it would be a waste to pay for gas to attend sessions. Asked what services she would undertake to regain custody of her children, she answered, "They can just keep testing me I guess." She also claimed the home was not as messy or dirty as reported previously and blamed a new puppy for the trash strewn on the floor. The report stated the Department had received no testing results for Elizabeth since the previous hearing. The court ordered Elizabeth to receive reunification services and transportation assistance

4

for drug testing and continued the contested jurisdiction/disposition hearing to May 1, 2014.

For a progress hearing on April 10, 2014, the Department reported Elizabeth had tested negative on March 20, 2014 but no other test results had been received. The Department recommended Elizabeth submit to further drug tests and to enter a drug rehabilitation program if she missed any tests, attend Narcotics Anonymous and enroll in individual therapy. The court agreed and ordered the Department to continue to provide Elizabeth with reunification services.

Although the jurisdiction/disposition hearing was reconvened on May 1, 2014, for reasons discussed off the record the hearing was continued until May 12, 2014; and the court ordered the Department to provide complete test results for the parents and to reassess Elizabeth and Allan's home. In the addendum report prepared for the continued hearing, the Department listed tests results from March and April 2014, showing that Elizabeth had tested negative on March 5th, March 20th and April 23rd but failed to appear for an April 1st test.

At the May 12, 2014 hearing the Department moved its reports into evidence and indicated it did not intend to introduce further evidence. Elizabeth's counsel, Margaret Burks, moved to dismiss the petition pursuant to section 350, subdivision (c), arguing the Department had failed to meet its burden at trial because the evidence it relied upon for the drug abuse allegation was stale. Ms. Burks acknowledged Elizabeth had missed the April 1, 2014 test but asserted there was no current indication Elizabeth was using drugs. The court, which had previously ordered the Department to provide a complete set of drug tests, asked about the results of those tests; and Ms. Burks explained the Department had failed to produce all of the test results. Ms. Burks stated she was ready to proceed and that it was the Department's burden to produce the relevant drug tests. After a discussion with the Department's counsel, the court noted the record did not include tests from January and February 2014 and concluded it could not rule on the petition or on the section 350, subdivision (c), motion without complete information. The hearing was recessed to "second call" and ultimately continued to May 15, 2014.

5

In a last-minute information submitted at some point on May 12, 2014, the Department reported Elizabeth had failed to submit to scheduled drug testing on five occasions: January 14 and 23, February 5, April 1 and May 5, 2014; and had submitted six negative tests: December 18, 2013, January 8, February 18, March 5, 20 and April 23, 2014. On May 13, 2014 the Department assessed Elizabeth and Allan's home and reported it had observed no evidence of drug use; the house was cleaner; and requested exterior improvements had been largely completed.

The jurisdiction/disposition hearing resumed on May 15, 2014. Before taking additional argument on the section 350, subdivision (c), motion, the court allowed the Department to move into evidence the last-minute information dated May 12, 2014 that contained a complete summary of Elizabeth's drug test results. The court then denied the motion, observing, "When the 350(c) was presented to the court, there was an issue for mother's testing and that resulted in a supplemental report." Responding to Ms. Burks's objection to the court's consideration of the additional information, the court stated: "It is the . . . job [of the courts] to make sure that they have all the evidence before them to in fact determine whether this child is safe or not. Being that there is no explanation for mother's missed tests, I need to hear from her or [be] presented other evidence."

After the motion was denied, Ms. Burks called Elizabeth to testify. Elizabeth acknowledged she had missed about five drug tests because of transportation difficulties or illness. She also admitted occasional methamphetamine use with her friends but denied she was addicted. She stated she had not used drugs (other than an occasional puff of marijuana) since January 2014 when she learned she was pregnant.

After the completion of testimony (including that of Byron and Allan), the court stated it found Elizabeth had not been credible. The court sustained the allegation under section 300, subdivision (b), that Elizabeth's drug used endangered the children's physical health and safety, created a detrimental home environment and placed the children at risk of physical harm. The court dismissed the allegations relating to Allan's marijuana use and the condition of the home. Proceeding to disposition, the court declared the children

6

dependents of the court and removed them from Elizabeth's custody. Heather was released to Allan's custody; Emily and Michael were released to Byron's custody.

## DISCUSSION

1. *The Juvenile Court Did Not Violate Elizabeth's Due Process Rights by Directing the Department To Supplement Its Evidence*

In contested juvenile court proceedings, the due process clause of the Fourteenth Amendment requires that "'not only must there be actual fairness in the hearing but there must be the appearance of justice.'" (*In re Jesse G.* (2005) 128 Cal.App.4th 724, 729 (*Jesse G.*), citing *Gloria M. v. Superior Court* (1971) 21 Cal.App.3d 525, 527 (*Gloria M.*).) "Where the [dependency] petition is contested, the parents are entitled to a fair hearing with an impartial arbiter, both in fact and in reality, and that means the provision of a referee who does not assume the functions of advocate." (*Lois R. v. Superior Court* (1971) 19 Cal.App.3d 895, 903 (*Lois R.*).)

Elizabeth contends the court's request the Department supply missing drug test results—after the Department had rested its case-in-chief—violated her right to due process because the juvenile court improperly assumed the role of prosecutor and acted simultaneously as an advocate for the Department and a juvenile court referee. She relies in particular on the decisions cited above, in which the appellate courts have reversed orders of the juvenile court following hearings in which the referees had assumed a prosecutorial role in the questioning of witnesses. (See *Lois R.*, *supra,* 19 Cal.App.3d at pp. 897-898 [finding violation of due process because referee questioned and cross-examined witnesses, as well as made and ruled on objections and motions during contested jurisdiction hearing]; *Gloria M., supra,* 21 Cal.App.3d at pp. 527-528 [referee violated parent's right to due process by examining and cross-examining witnesses in absence of counsel for petitioner Department and then adjudicating jurisdiction]; cf. *Jesse G., supra,* 128 Cal.App.4th at p. 729 [finding referee's questioning of parent of truant, in absence of the deputy district attorney, violated juvenile's due process rights].)

Nothing in the instant record, however, is inconsistent with the proper role of a trial court in contested juvenile dependency proceedings. At the time Ms. Burks made

7

the section 350, subdivision (c), motion, she advised the court the Department had failed to make available a complete set of Elizabeth's drug test results, thus prompting the court to order the results be provided as soon as possible. The court's action was consistent with its statutory mandate: "When ruling in dependency proceedings, the welfare of the minor is the paramount concern of the court. [Citation.] The purpose of these proceedings is not to punish the parent, but to protect the child. [Citation.] As a person, the child's future is as vitally affected as is that of the parties competing for his or her custody. [Citation.] Consequently, a trial court should not restrict or prevent testimony on formalistic grounds. On the contrary, the court should avail itself of all evidence which might bear on the child's best interest." (*Guadalupe A. v. Superior Court* (1991) 234 Cal.App.3d 100, 106 (*Guadalupe A.*); accord, *In re B.D.* (2007) 156 Cal.App.4th 975, 983.)

More specifically, in a contested jurisdictional hearing the court is charged with determining whether the allegations of the petition are true (Cal. Rules of Court, rule 5.684(a))[3] and, notwithstanding the broad language in the authorities cited by Elizabeth, is authorized to question witnesses in accordance with Evidence Code section 775 (rule 5.684(b)). Under this provision the dependency court may call witnesses on its own motion "and interrogate them the same as if they had been produced by a party to the action, and the parties may object to the questions asked and the evidence adduced the same as if such witness were called and examined by an adverse party. Such witness may be cross-examined by all parties to the action in such order as the court directs." (Evid. Code, § 775; see *In re S.C.* (2006) 138 Cal.App.4th 396, 423 ["[i]t is well within the province of the judge to ask a witness questions, particularly when the judge is the fact finder"]; see also rule 5.690(b) [in adjudicating disposition "court may require production of other relevant evidence on its own motion"].)

Elizabeth counters the court's right to ask questions under Evidence Code section 775 is solely for "clarification purposes," and she asserts that limited right may

_____

3        References to rule or rules are to the California Rules of Court.

8

not be subverted to authorize augmentation of the Department's case-in-chief. Her reading of this section is unjustifiably narrow: "'[I]t has been repeatedly held that if a judge desires to be further informed on certain points mentioned in the testimony it is entirely proper for him to ask proper questions for the purpose of developing all the facts in regard to them. Considerable latitude is allowed the judge in this respect as long as a fair trial is indicated [to both parties]. Courts are established to discover where lies the truth when issues are contested, and the final responsibility to see that justice is done rests with the judge.'" (*People v. Carlucci* (1979) 23 Cal.3d 249, 255 [discussing Evid. Code, § 775's codification of "traditional case law"] (*Carlucci*); accord, *Conservatorship of Pamela J.* (2005) 133 Cal.App.4th 807, 827 (*Pamela J.*).) As the Court of Appeal in *Pamela J.* explained, "'It apparently cannot be repeated too often for the guidance of a part of the legal profession that a judge is not a mere umpire presiding over a contest of wits between professional opponents, but a judicial officer entrusted with the grave task of determining where justice lies under the law and the facts between the parties who have sought the protection of our courts. Within reasonable limits, it is not only the right but the duty of a trial judge to clearly bring out the facts so that the important functions of his office may be fairly and justly performed.'" (*Pamela J.*, at p. 827.)[4]

In short, nothing about the court's actions or statements suggests prejudgment of the facts or preexisting bias against Elizabeth; nor was there an appearance of unfairness. The court became aware that relevant evidence had been omitted from the case presented

---

[4] In *Pamela J., supra,* 133 Cal.App.4th 807 a patient (the conservatee) appealed a trial court ruling made in her absence that authorized her father to determine whether she would be given electroconvulsive treatment. The Court of Appeal reversed, deciding the relevant provisions of the Lanterman-Petris-Short Act (§ 5000 et seq.) required the patient's presence at the hearing. (*Pamela J.,* at p. 825.) Discussing Evidence Code section 775, the court rejected the reasoning of *Lois R.* and *Gloria M.* on the ground those cases had been decided before the Supreme Court's decision in *Carlucci.* (*Pamela J.,* at p. 826.) Allowing focused questioning by a trial court "aids in a 'simplified and expeditious' resolution of a capacity hearing unconstrained by the more stringent procedural requirements of a major civil trial . . . [and] benefits the interests of the patient as well as medical professionals, court and public." (*Id.* at p. 828.) These policies are equally at play in juvenile dependency proceedings.

by the Department and asked the Department to supplement the record with a list of drug test results to provide the court with a clearer understanding of Elizabeth's capacity to parent her three children. On this record the court did not overstep its role in adjudicating the petition.

2. *The Juvenile Court Did Not Abuse Its Discretion in Continuing the Hearing*

The juvenile court has the power to "control all proceedings during the hearings with a view to the expeditious and effective ascertainment of the jurisdictional facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought." (§ 350, subd. (a)(1); see *Renee S. v. Superior Court* (1999) 76 Cal.App.4th 187, 193.) Although continuances are discouraged in dependency cases (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 604), the juvenile court may continue a dependency hearing upon a showing of good cause, provided the continuance is not contrary to the interest of the child. (See § 352, subd. (a) ["[N]o continuance shall be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements."]; *In re A.M.* (2008) 164 Cal.App.4th 914, 925.) We review an order denying or granting a continuance for abuse of discretion. (See *Giovanni F.,* at p. 605 [reviewing order denying continuance]; *In re Mary B.* (2013) 218 Cal.App.4th 1474, 1481 [reviewing order granting continuance] (*Mary B.*).) "To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice." (*In re Joey G.* (2012) 206 Cal.App.4th 343, 346.)

Elizabeth contends the court erred as a matter of law by failing to identify on the record good cause for the continuance. Tellingly, she does not argue—and could not in good faith—the continuance was contrary to the children's best interests. After the court's inquiry about the remaining drug test results, the record reveals the matter was set aside for second call because of the court's crowded docket. The hearing was ultimately

10

reconvened three days later on May 15, 2014. Notwithstanding the court's failure to make an express finding of good cause for the continuance, the record adequately reflects the court's conclusion the test results constituted significant information necessary for its determination whether jurisdiction over the children was supported by substantial evidence. (See, e.g., *In re Andrea G.* (1990) 221 Cal.App.3d 547, 554 ["ample" evidence supported implied finding and result "obvious from the record"].) Moreover, the modest three-day continuance did not result in a violation of the time limits contained in section 352, subdivision (b).[5]

In any event, Elizabeth has failed to show she was prejudiced by the continuance; hence, any error by the court was harmless. (*In re Celine R.* (2003) 31 Cal.4th 45, 60-61 [applying harmless error standard to allegation trial court erroneously failed to appoint separate counsel for minor]; *In re Angelique C.* (2003) 113 Cal.App.4th 509, 523 [parent failed to demonstrate prejudice resulting from continuance of disposition hearing in violation of § 352, subd. (b)].)

3. *There Was No Violation of Section 350, Subdivision (c)*

Section 350 addresses the control and conduct of proceedings under section 300. As discussed, the juvenile court has the power to "control all proceedings during the hearings with a view to the expeditious and effective ascertainment of the jurisdictional

---

[5]       Section 352, subdivision (b), contains two time limitations: 1) the court is required to make a finding of "exceptional circumstances" if the dispositional hearing is held beyond 60 days from the time the minor is removed from the parents' custody; and 2) "In no event shall the court grant continuances that would cause the hearing . . . to be completed more than six months after [the detention] hearing . . . ." In this case, the children were removed on November 27, 2013, and the 60 days expired February 26, 2014. Whether "exceptional circumstances" were noted at the time is not before us, although the record indicates the Department's investigation was delayed during that period because of Elizabeth's failure to respond to the investigator. As to the second limitation, the continuation of the hearing for three days did not place the hearing outside the six-month period. (See also § 352, subd. (c) ["[i]n any case in which the parent, guardian, or minor is represented by counsel and no objection is made to an order continuing any hearing beyond the time limit within which the hearing is otherwise required to be held, the absence of such an objection shall be deemed a consent to the continuance"].)

facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought." (§ 350, subd. (a)(1).) Section 350, subdivision (c), which authorizes the motion to dismiss at issue here, provides: "At any hearing in which the probation department bears the burden of proof, after the presentation of evidence on behalf of the probation department and the minor has been closed, the court, on motion of the minor, parent, or guardian, or on its own motion, shall order whatever action the law requires of it if the court, upon weighing all of the evidence then before it, finds that the burden of proof has not been met." This section "allows a parent to test the sufficiency of the [a]gency's evidence before presenting his or her case" and "permits the court to dismiss the dependency petition when, upon weighing the evidence on behalf of the agency and the minor then before it, it finds that the burden of proof has not been met." (*In re Eric H.* (1997) 54 Cal.App.4th 955, 968-969 [comparing motion under § 350, subd. (c), to motion for nonsuit] (*Eric H.*; see *In re Roberto C.* (2012) 209 Cal.App.4th 1241, 1253 [motion to dismiss under § 350, subd. (c), resembles motion under Code Civ. Proc. § 631.8, which authorizes motion for nonsuit in a nonjury case in which bench officer is ultimate trier of fact]; accord, *Mary B., supra,* 218 Cal.App.4th at pp. 1479-1480.)

Elizabeth contends the juvenile court violated section 350, subdivision (c), by failing to rule on the motion before receiving additional evidence from the Department addressing Elizabeth's missing drug test results. More specifically, the question Elizabeth raises is whether the juvenile court could properly insist the Department produce the evidence it had previously ordered—evidence necessary to understand the current status of Elizabeth's substance abuse problem—after a motion under section 350, subdivision (c), had been made. Given the mandate of the juvenile court in dependency proceedings to protect the children before it and its obligation to "avail itself of all evidence which might bear on the child's best interest" (*Guadalupe A., supra,* 234 Cal.App.3d at p. 106), we have no doubt the court here acted well within its discretion. (See generally *In re A.S.* (2011) 202 Cal.App.4th 237, 245-246 ["[t]he purpose of dependency law 'is to provide maximum safety and protection' for currently

abused and neglected children and to ensure the safety of children at risk of harm," quoting § 300.2].)

In *Guadalupe A.* the juvenile court refused to allow Guadalupe's counsel to present evidence before ruling on the parent's motion to dismiss under section 350, subdivision (c), which, at the time, did not contemplate the consideration of any evidence other than that produced by the petitioning child welfare agency. The Court of Appeal reversed, concluding "the literal application of section 350, subdivision (c) . . . was inconsistent with the mandate to fully protect the interests of the minor." (*Guadalupe A., supra,* 234 Cal.App.3d at p. 107.) "For this reason we conclude that section 350, subdivision (c) should be interpreted as permitting pertinent evidence offered by another party to be presented before the motion is ruled on." (*Guadalupe A.,* at p. 107; accord, *In re Lauren P.* (1996) 44 Cal.App.4th 763, 769.)

In 1994 the Legislature amended section 350, subdivision (c), to specify a motion to dismiss may be brought "after the presentation of evidence on behalf of [the agency] *and the minor* has been closed . . . ." (Italics added.) Considering this amendment, the Fifth District Court of Appeal concluded, based on the maxim of statutory construction *expression unius est exclusio alterius*, section 350, subdivision (c), permitted only the agency or the minor to submit evidence in support of the petition and did not authorize a parent to do so before the court ruled on a motion to dismiss. (*Eric H.*, *supra*, 54 Cal.App.4th at p. 965.) The court rejected the argument the court should consider any and all evidence in support of a dependency petition on the ground "the overburdened juvenile justice system would fail under such a rule." (*Id.* at p. 966.)

The decision in *Eric H.*, however, was limited to a parent's role in supporting a dependency petition and does not address whether the juvenile court itself may, before ruling on the motion to dismiss, seek additional evidence from the Department. In *Mary B., supra,* 218 Cal.App.4th 1474, on the other hand, the appellate court analogized a father's motion for a directed verdict after the close of testimony at a contested six-month review hearing to a motion under section 350, subdivision (c), and held the juvenile court had not abused its discretion in continuing the hearing to allow the child's

counsel to confer with her client and the child's caregiver and thereafter reopening the case and admitting into evidence a supplemental report from the child welfare agency: "Generally, the better practice is to consider all information bearing on the best interests of a child." (*Mary B*., at p. 1481.)  As the court explained, "[T]he overriding issue was ensuring [the child's] physical and emotional well-being." (*Id.* at p. 1482.)

Whether we construe the admission of the corrected drug test results as the product of a motion to reopen the Department's case-in-chief or as a permissible sua sponte inquiry by the juvenile court to ensure the information in the record was complete, on this record there was no abuse of discretion.

## DISPOSITION

The orders of the juvenile court are affirmed.


PERLUSS, P. J.


We concur:



WOODS, J.



ZELON, J.

14