Filed 8/30/22  Marriage of Favela and Symon CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of MAYRA FAVELA and RONALDO D. SYMON, JR. | |
| MAYRA FAVELA, | D079319 |
| Respondent, | |
| v. | (Super. Ct. No. 17FL009835C) |
| RONALDO D. SYMON, JR., | |
| Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed in part and reversed in part with directions.

Ronaldo D. Symon, Jr., in pro per, for Appellant.

No appearance for Respondent.

After Mayra Favela (Wife) filed for divorce from Ronaldo D. Symon, Jr. (Husband), the court held a trial to determine spousal support, property division, attorney fees, and whether to award sanctions pursuant to Family

Code section 271.[1]  Husband appeals the trial court's judgment, arguing the court erred by: (1) imputing $60,000 per month in income to him in determining the amount of spousal support, (2) improperly weighing some of the factors set forth in section 4320 in deciding to award spousal support, (3) finding the parties' date of separation to be December 7, 2016, (4) failing to divide the community property equally, and (5) violating his due process rights by questioning witnesses at trial and denying him the opportunity to present his case.[2]

We conclude that while the court did not abuse its discretion in imputing income to Husband, there is no substantial evidence to support imputed income in the amount of $60,000 per month.  We therefore reverse the spousal support orders and remand with instructions to redetermine the amount of Husband's imputed income and recalculate any spousal support in a manner consistent with the principles discussed *post*.  In all other respects, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Pre-trial Proceedings*

The parties were married in October 2012 and Wife filed for divorce in August 2017.  In November 2019, Wife requested an order seeking spousal support and attorney fees and costs, as well as an order regarding noncompliance with disclosure requirements.  At a June 2020 hearing on the request, Husband did not appear and the trial court ordered him to pay monthly spousal support and arrears.  The court also set the case for trial,

_____

[1]     All further undesignated statutory references are to the Family Code.

[2]     Because Wife filed no brief, we determine the appeal based on the record provided and Husband's opening brief.  (Cal. Rules of Court, rule 8.220(a)(2).)

2

ordered Husband to pay attorney fees and costs, and ordered him to produce documents relating to the leasing of their Florida residence, Husband's businesses, and his retirement and investment accounts.

In September 2020 on the initial date set for trial, Husband sought and was granted a continuance after the court found that he did not receive notice of the June 2020 hearing. The court also vacated the June 2020 support orders, but kept all discovery orders in place. On the subject of Wife's request for documents, Husband told the court that he never had tenants in their Florida home, but that he could likely get $3,000 a month if he rented it out. Husband claimed he had no documents relating to retirement or investment accounts, and that he had provided all pertinent documents relating to the businesses he owned during the marriage.

B. *Trial Testimony*

When the case proceeded to trial in December 2020, Husband represented himself and Wife had legal counsel. At trial, the parties sought resolution regarding the date of separation, spousal support, property division, claims for credits and reimbursements, asset division, and attorney fees.

After the parties married in October 2012, they bought a house and lived together in Florida for a few years. Husband worked in marketing and lead generation and formed his own company, Sojourn Advisory Group LLC (Sojourn), during the marriage. Wife worked at a restaurant when they met. After they married, she took classes while working as a photographer. During their marriage, they took frequent trips, drove luxury vehicles, and enjoyed fine dining.

In December 2015, Husband moved out of their home while they sought marriage counseling and rented a nearby apartment. He believed the

3

marriage was "likely to be over" at that point. In contrast, Wife believed they would reunite and move forward in their marriage after completing therapy and spending some time apart. In April 2016, Wife left their residence in Florida to live with her family in Nevada for a couple of months before returning to Florida in June 2016 to go to New York with Husband. She returned to Nevada after their trip, and in November 2016, Husband invited her to accompany him to Napa Valley for a business meeting and introduced her as his wife to business associates.

Wife testified that around December 7, 2016, she decided that the marriage was over after learning that Husband was having an extramarital affair. She moved to San Diego and got a job working as a restaurant server and Husband moved to Portland for a new business opportunity. On August 30, 2017, Wife filed for divorce.

Alex Shvarts, CEO of a business funding company named FundKite, testified about his dealings with Husband and Sojourn. In March 2020, Husband obtained funding from FundKite for Sojourn. Husband agreed to sell Sojourn's future account receivables to FundKite, and he represented that Sojourn had projected annual sales of $5,000,000. Husband also represented to FundKite that he had other companies generating income aside from Sojourn. Husband defaulted on the funding terms when he sold the same receivables he had sold to FundKite to another company. FundKite brought suit against Sojourn and its guarantors.

C. *The Parties' Finances*

Wife testified that she was making $3,000 per month as a waitress before being laid off and had between $25,000 and $40,000 in savings. She drove a 2014 Toyota Corolla and was making $200 monthly payments on the car. After separation and up through June 2018, Wife used a credit card paid

4

for by Husband for miscellaneous purchases totaling approximately $6,300. Wife also made use of a joint account funded by Husband to pay $30,600 in total rent between January 2017 and June 2020. At the time of trial, Wife had no other debts except for her vehicle.

Husband's finances are more complicated. In his 2017 tax returns, Husband reported net income of about $150,000 from Sojourn. Husband testified that he was Sojourn's only employee, all of the company's income came to him, and that "[t]he company was [him]." According to Husband's income and expense declaration (I&E) signed under penalty of perjury in March 2018, for the twelve months prior, Husband earned $10,000 a month plus an average monthly bonus of $20,045 from a company called Trend Capital. He claimed in the March 2018 I&E that his income from self-employment through Sojourn was negative $2,000, but he also testified that Sojourn paid $44,835 for his rent as a small business expense during that same period. Sojourn also paid for his Corvette and Jaguar, all of his credit cards, much of his travel, and his "entertaining" expenses. Husband received business distributions from Sojourn in 2017 and 2018 totaling approximately $316,000. And in 2018, Husband apparently paid $40,000 cash to buy a car as a gift for a woman he was dating.

In a January 2020 I&E, Husband listed his monthly income as $45,549 and his total debt as $30,000 for the prior 12 months. A separate profit and loss statement for Sojourn showed the company's gross revenue in 2019 was approximately $7.9 million. In the years leading up to 2019, Sojourn's gross revenue was between $400,000 and $990,000. Husband said that in 2019, he left Trend Capital to focus solely on Sojourn, which experienced explosive growth that year. However, Sojourn closed around the time it was sued by FundKite in 2020.

5

For spousal support purposes, in September 2020, Husband reported zero income and said he had $400,000 in debt. But less than two weeks before trial in December 2020, Husband paid about $3,000 for an expensive sushi dinner and $350 for a helicopter ride for him and his friends to celebrate his birthday. At trial, Husband reported being "close to filing for bankruptcy," but he also testified that he was still making enough money to support his lifestyle. For example, he was paying $6,200 a month for rent in Miami. Although he no longer had the Jaguar, he was still making $1,200 monthly payments on the Corvette and leasing a Lexus sports car for $2,000 per month. He said he paid about $500 a month for cell phone and utility bills, and he estimated his monthly expenses were at least $15,000.

There were many gaps in Husband's documentation of his finances. For example, Husband did not disclose at least two of his bank accounts on the March 2018 I&E. When asked about inconsistencies in his reported income and expenses, Husband said that he had an accountant who embezzled $545,000 from him for the last several months of 2019, and that "the books were cooked" and unreliable. Husband also did not provide some of his tax documents for 2019 or prior years, citing the embezzlement as the reason they were not produced.

As for the parties' Florida residence, Husband said he paid the mortgage from December 2016 until about August 2020 in the amount of $2,600 per month, but he provided no mortgage statements, claiming he had none. Although the residence never had renters, the parties estimated the property's fair rental value was between $2,700 and $3,000.

D. *Trial Court Findings*

The trial court found the date of separation to be December 7, 2016, and the duration of the marriage to be four years and one month. For

purposes of calculating temporary spousal support, the court found Wife's income to be $3,000 per month. After noting that Husband's income was variable over the years and difficult to determine, the court ultimately concluded that the stated monthly income of roughly $45,000 in his January 2020 I&E was understated and not credible. The court therefore imputed $60,000 of monthly income to Husband based on his lifestyle and spending, arriving at a guideline support amount of $13,223 per month for 13 months.

For permanent spousal support, the court found that the parties' marital standard of living was upper class. The court cited its previous findings regarding their respective incomes, and after analyzing other considerations under section 4320, the court concluded that Husband should pay Wife $14,000 per month in permanent spousal support for a period of 12 months.

Regarding the division of property, the court found that while Husband was entitled to reimbursement for mortgage payments on the Florida residence, Wife was also entitled to credit for her portion of the property's fair market rental value, and that those amounts "result in a wash." The court ordered that the residence be sold and the net proceeds split in half for each party. The court also ordered Husband to pay Wife half of the value of a retirement account that was acquired during the course of the marriage. The court allocated Sojourn and all of its associated debts and liabilities to Husband, along with Husband's vehicles.

As for attorney fees, the court awarded Wife a $30,000 contribution from Husband for her fees and denied her request for sanctions under section 271. Husband timely appealed the judgment.

DISCUSSION

I

Husband takes issue with various aspects of the spousal support orders, but his arguments boil down to a contention that the trial court erred by imputing $60,000 of monthly income to him. We conclude that although the court did not abuse its discretion in imputing income to Husband, there is no substantial evidence in the record to support the imputed amount of $60,000 per month.

A trial court's decision to impute income to a spouse for support purposes based on his earning capacity is reviewed under the abuse of discretion standard. (See *In re Marriage of Destein* (2001) 91 Cal.App.4th 1385, 1393.) However, a decision on the specific amount of earning capacity to be imputed is reviewed under the substantial evidence standard. (See *In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 930.) The court's decision must be based on evidence that the spouse has the ability and the opportunity to earn the amount of income imputed by the court. (*Ibid*.) " 'Figures for earning capacity cannot be drawn from thin air; they must have some tangible evidentiary foundation.' " (*In re Marriage of Smith* (2001) 90 Cal.App.4th 74, 82 (*Smith*).) The party seeking to impute income has the burden of producing "competent evidence that [the other spouse] had both an ability and an opportunity to earn the attributed income." (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1329.)

Here, the court did not abuse its discretion in finding that some amount of income should be imputed to Husband. The court noted that Husband had a recent history of high earnings, but he claimed he had zero income at trial despite the fact that he continued to spend over $12,000 per month. Husband gave conflicting reports about his finances, failed to provide key tax

8

information, and funneled personal expenses through various businesses, leading the court to conclude "that Husband has never fully disclosed his true income." Accordingly, the court found Husband "not credible with respect to the amount of income he reported earning." In these circumstances the court acted well within its discretion in deciding to impute income to Husband. (See *In re Marriage of Barth* (2012) 210 Cal.App.4th 363, 377 (*Barth*) [concluding trial court "had no choice but to impute income" to husband where he understated his income, included personal expenses as business expenses, and was found not credible on "any issue relating to his finances"].)

However, the court did not cite specific evidence that Husband had the ability and opportunity to earn $60,000 per month. Even Wife, who had the burden of producing evidence of Husband's earning capacity, only asked the court to impute $45,000 of monthly income to Husband based on his January 2020 I&E. It is unclear how the court arrived at an amount $15,000 greater than what Wife was seeking. There was no expert testimony, vocational report, or other evidence regarding Husband's earning capacity that would explain that amount. (Cf. *Barth, supra,* 210 Cal.App.4th at pp. 375–376 [finding no abuse of discretion where court relied on expert testimony to impute income to husband after finding husband's testimony lacking in credibility].) We are sympathetic to the fact that Husband's failure to comply with discovery orders[3] and his inconsistent testimony were the primary reasons for the lack of reliable information regarding his income. However, even when a party's noncompliance means that the only evidence regarding income is his own testimony and his I&Es, a spousal support order cannot be "eyeball[ed]" to produce an imputed amount without sufficient evidentiary support. (See *In re Marriage of Loh* (2001) 93 Cal.App.4th 325, 327, 330

---

3    Wife did not move to compel discovery.

(*Loh*) [concluding there was insufficient evidence to support income imputed to husband where wife never moved to compel production of his tax documents, and upward support adjustment could not serve as a de facto discovery sanction].)

The court cited Husband's lifestyle and extravagant spending, including at least $12,500 in monthly expenses, as the basis for finding $60,000 in imputable monthly income. But that spending is not necessarily inconsistent with Husband's January 2020 I&E stating he had a monthly income of $45,000. And although the court also cited Husband's discretionary spending and the personal expenses he paid through Sojourn, it is unclear how the court arrived at $60,000 as an accurate reflection of Husband's income, inclusive of that spending and those expenses.

While the record contains ample evidence that Husband was understating his income, the imputed income amount still must have " 'some tangible evidentiary foundation.' " (*Smith, supra,* 90 Cal.App.4th at p. 82.) "It is possible, certainly, that [Husband's] particular skills and experience would make it likely that he could earn similar sums in the future, but that probability must be *evidenced*, not merely suspected." (*In re Marriage of Berger* (2009) 170 Cal.App.4th 1070, 1079.) Moreover, evidence of lifestyle cannot be a substitute for proper evidence of income, and Wife herself relied on Husband's January 2020 I&E in requesting that the court impute income of $45,000 per month. (See *Loh, supra,* 93 Cal.App.4th at p. 327.)

Accordingly, we reverse the spousal support orders and remand with instructions to redetermine the amount of Husband's imputed income and recalculate the amount of any spousal support in a manner consistent with the principles discussed in this opinion.

## II

Husband also argues that the court failed to properly weigh some of the factors set forth in section 4320 in determining spousal support. His assertions appear to fall into two categories of argument: (1) that the trial court "should have considered [Wife's] voluntary marital standard of living" post-separation in evaluating her "needs" pursuant to section 4320; and (2) the court erred in considering the disparity in the parties' standards of living when making its spousal support determination.

Courts must consider the factors listed in section 4320, but so long as the applicable factors are considered and weighed, the decision to award spousal support will not be disturbed on appeal absent abuse of discretion exceeding the bounds of reason. (See *In re Marriage of McLain* (2017) 7 Cal.App.5th 262, 271.) Section 4320, subdivision (d) requires that courts consider the "needs of each party based on the standard of living established during the marriage." The marital standard of living is "a general description of the station in life the parties had achieved by the date of separation," rather than a "mathematical standard." (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 491.)

Here, the trial court found that the parties had an upper-class standard of living during marriage because they "went on nice vacations, frequently ate out, drove high end vehicles and lived very well." The court also found that based on Wife's income and expenses at the time of trial, she was not able to meet the standard of living maintained during marriage. The court's findings reflect that it weighed the parties' needs based on the evidence adduced at trial, which showed that the parties enjoyed luxuries during their marriage that Wife, who took a job waitressing post-separation before being laid off, could not sustain at the time of trial. The court's decision to award

11

some amount of spousal support to Wife based on its consideration of these factors was well within the bounds of reason.

Husband argues that the court should have given more weight to the fact that Wife *could* have improved her post-separation standard of living and met her needs by using their joint account, which Husband alone funded. But the trial court reasonably chose to rely instead on Wife's employment income (or lack thereof) to determine her ability to meet her needs, rather than her short-term use of Husband's separate property. As noted, if the court's consideration of section 4320, subdivision (d) was within the bounds of reason, we will not reweigh the factors, and there is no basis for doing so here. (See *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 304 [trial court has discretion to determine appropriate weight to accord each factor].)

Husband's argument that the court erred in considering the disparity in the parties' standards of living is also meritless. Section 4320, subdivision (k) requires the court to consider the balance of hardships to each party. The court found that this factor weighed heavily in Wife's favor because at the time of trial, she was waiting to resume work as a waitress, driving an inexpensive vehicle, and living modestly with very limited discretionary spending. Meanwhile, Husband was living lavishly and residing in an expensive high-rise condominium, spending thousands of dollars on dinner shortly before trial, purchasing helicopter rides and an electric vehicle for various women, and driving multiple luxury vehicles himself. Furthermore, the court considered the marriage's short duration and the goal that Wife should eventually be self-sufficient by limiting the permanent spousal support to 12 months' duration. Accordingly, we affirm the trial court's decision to award spousal support to Wife based on its consideration of the

12

section 4320 factors, although the amount of support must be adjusted as discussed *ante*.

III

Husband next argues that the court erred in finding the date of separation to be December 7, 2016. We disagree.

Section 70 defines the date of separation as the date when "a complete and final break in the marital relationship has occurred," as evidenced by one spouse's expression to the other of the intent to end the marriage, and conduct by that spouse consistent with their stated intent. The statute requires the court to consider "all relevant evidence" when it determines the separation date. (*Ibid.*) "The date of separation is a factual issue established by a preponderance of the evidence" and we review the trial court's determination for substantial evidence. (See *In re Marriage of Lee & Lin* (2019) 41 Cal.App.5th 698, 702.) Under the substantial evidence standard, we indulge all legitimate and reasonable inferences to uphold the trial court's decision, and the testimony of a single witness can provide substantial evidence regardless of the amount of evidence to the contrary. (*Ibid.*; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

According to Husband, the proper date of separation was December 1, 2015, because that was when he first moved out of their Florida residence and intended to end the marriage. The trial court disagreed, finding that December 7, 2016, was the appropriate date of separation because up until that point, the parties still traveled together and Husband introduced Wife as his spouse on more than one occasion. The court noted that the parties engaged in marital counseling *after* December 1, 2015, and the court gave little credence to Husband's explanation that the counseling was not intended to repair the marriage. Wife testified that she believed they would reunite

13

and move forward in their marriage after completing therapy and spending some time apart. She further testified that it wasn't until December 7, 2016 that she discovered Husband's infidelity and decided the marriage was over. Because this constitutes substantial evidence supporting the trial court's decision regarding the date of separation, we affirm the court's finding.

IV

Husband next asserts that the trial court failed to divide the parties' community property equally. We disagree.

"Generally, we review a ruling dividing property under the abuse of discretion standard. [Citation.] Factual findings are upheld if supported by substantial evidence." (See *In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 201.) Section 2640, subdivision (b) provides that unless waived in writing, a party shall be reimbursed for their contributions to the acquisition of the community property estate to the extent the party traces the contributions to a separate property source. Section 2550 provides that a court must "divide the community estate of the parties equally" unless the parties agree otherwise.

Under those provisions, a spouse who uses separate funds to pay community obligations, such as a mortgage on community property, is usually entitled to reimbursement for those expenditures. (See *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84.) Conversely, a spouse who has exclusive use of community property such as a residence after the parties have separated must reimburse the community for the use of the residence. (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 978; *In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 374.) Combining those principles, where community property is being financed, the spouse in possession can satisfy his duty to compensate the community for use of the

14

asset by making the monthly finance payments from his separate property. (See *Falcone & Fyke,* at pp. 978–979.)

The parties agree that the Florida residence is community property, and that Husband's post-separation mortgage payments came from his separate property. (See §§ 760, 771.) The court found Husband was entitled to reimbursement for those mortgage payments, and it also found that Wife was entitled to reimbursement for a portion of the fair market rental value because Husband was letting people stay there rent-free.

Husband argues that "the record is absent any substantial evidence regarding credits for rental income" and that the court abused its discretion in finding that the credits were a "wash." The court acknowledged there was insufficient evidence to establish *conclusively* the amounts of the mortgage payments and the property's fair market rental value. But Wife testified that she believed the fair rental value was between $2,700 and $3,000 per month, and Husband also stated under penalty of perjury that he could likely collect $3,000 a month in rent from the property. Husband provided no mortgage statements, but he testified that the payments were $2,600.

We conclude the trial court did not abuse its discretion in awarding reimbursements, and that substantial evidence supports its finding that the parties' reimbursements would be roughly equal, resulting in a "wash." (See *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 819 (*Braud*) ["the decision to grant an offset for net fair rental value is a matter within the equitable discretion of the trial court, to be decided on a case-by-case basis, and will not be required in any particular amount if and when the trial court determines it would be equitable to order such an offset"].) While Husband was entitled to reimbursement from the community for his post-separation mortgage contributions, the community was entitled to the property's

15

reasonable rental value it was deprived of by Husband allowing others to use the property rent-free. (See *In re Marriage of Mohler* (2020) 47 Cal.App.5th 788, 796 (*Mohler*) ["the community may be compensated for its loss of rental income due to [Husband's] occupation" of the marital property post-separation].)

Testimony from both parties showed that the property's rental value and Husband's mortgage payments were roughly equal. In fact, the court could have required Husband to reimburse the community for the difference between the rental value of the property and his mortgage payments, since there was evidence in the record that the former exceeded the latter. (See *Mohler, supra*, 47 Cal.App.5th at p. 795 [the community is entitled to its share of "the amount by which the rental value exceeded the expenses to maintain and operate the property"].) We conclude that the trial court acted well within its discretion in dividing the community property here. (See *In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1174 ["The family law court is a court of equity and fairness."]; cf. *Braud, supra*, 45 Cal.App.4th at p. 819 ["The trial court was free to deny [Husband's] request for an offset altogether, at least as to his community property interest."].)

V

Finally, Husband argues that his due process rights were violated because he was given "little opportunity . . . to present his case." He specifically takes issue with the fact that the court engaged in active questioning of the witnesses, denied Husband's request to admit exhibits after he rested his case, and allowed Wife's attorney to recall him as a rebuttal witness. We conclude that Husband's arguments are meritless.

Evidence Code section 775 provides in relevant part that on its own motion, the court "may call witnesses and interrogate them the same as if

they had been produced by a party to the action, and the parties may object to the questions asked and the evidence adduced the same as if such witnesses were called and examined by an adverse party." It is well-accepted that " ' "if a judge desires to be further informed on certain points mentioned in the testimony it is entirely proper for him to ask proper questions for the purpose of developing all the facts in regard to them. Considerable latitude is allowed the judge in this respect as long as a fair trial is indicated [to both parties]. Courts are established to discover where lies the truth when issues are contested, and the final responsibility to see that justice is done rests with the judge." ' " (*In re Emily D.* (2015) 234 Cal.App.4th 438, 446–447 (*Emily D.*).)

Nothing in the record here is inconsistent with the proper role of a trial court in contested proceedings. The trial was conducted over the course of three days and both parties were given the opportunity to call witnesses, cross-examine them, and present evidence where a proper foundation was laid. Husband points to no evidence that the court had prejudged the facts, exhibited bias, or was otherwise unfair in its questioning. (See *Emily D.*, *supra*, 234 Cal.App.4th at p. 447.)

As for admitting evidence, pro per litigants are not given preferential treatment. (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210 [self-represented litigant "is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys"].) Husband attempted to introduce additional exhibits after he rested his case, but he did so without first laying a proper foundation for their admission through testimony, so the trial court properly excluded them. Furthermore, Husband acknowledges that he was able to admit evidence during his cross-examination of Wife. After he finished his

17

cross, the trial court judge explicitly asked, "Anything further, Mr. Symon?" Husband responded, "That is it, Your Honor." The judge then asked, "Do you rest?" And Husband responded, "I rest." After Wife's attorney called Husband as a rebuttal witness and he concluded his testimony, the court asked Husband again, "Mr. Symon, do you have any additional witnesses?" and he responded, "No, Your Honor." Husband thus had ample opportunity to present his case within the bounds of the rules of evidence and civil procedure.

Lastly, Husband made no objection when Wife called him to testify as a rebuttal witness, so he forfeited any argument that the trial court erred by permitting his rebuttal testimony. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected"].) Accordingly, we conclude that the court did not overstep its role in adjudicating the parties' disputes here.

## DISPOSITION

The spousal support orders are reversed and remanded with instructions to redetermine the amount of Husband's imputed income and recalculate the amount of any spousal support consistent with the principles discussed in this opinion. On remand, the trial court may consider the original trial record and any additional evidence presented by the parties, including evidence of any changed circumstances. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal.


BUCHANAN, J.

WE CONCUR:


HUFFMAN, Acting P. J.


19

AARON, J.